**Lorraine BLOW, individually and on behalf of her infant child, Christopher Seymour, Plaintiff,**

v.

**John L. LASCARIS, in his capacity as Commissioner of the Onondaga Department of Social Services, Defendant.**

No. 81–CV–42.

United States District Court,
N. D. New York.

Sept. 8, 1981.

Baker & Clark, Syracuse, N. Y., for plaintiff; Frank A. Clark, Syracuse, N. Y., of counsel.

James H. Hughes, Chief Welfare Atty., Syracuse, N. Y., for defendant; Barbara M. Kurr, Syracuse, N. Y., of counsel.

McCURN, District Judge.

## MEMORANDUM–DECISION AND ORDER

Before the Court is defendant's motion to dismiss an action brought by plaintiff pur-

suant to 42 U.S.C. § 1983. Plaintiff seeks recovery of costs and attorney's fees incurred by plaintiff in enforcing a federal statutory right in state administrative proceedings. Plaintiff bases her claim on 42 U.S.C. § 1988, as amended by the Civil Rights Attorney's Fees Awards Act of 1976, which provides for the discretionary awarding of attorney's fees in actions or proceedings brought to enforce certain civil rights statutes. Jurisdiction is asserted under 28 U.S.C. § 1331.

Defendant moves to dismiss under Fed.R. Civ.P. 12(b)(1) on grounds: (1) no justiciable controversy exists because plaintiff was successful in her state proceeding, i. e., she received the medical benefits which were the subject of the controversy; (2) Section 1988 does not provide independent subject matter jurisdiction. Plaintiff cross moves for summary judgment.

## FACTS

On June 4, 1980, plaintiff applied to defendant for a grant of medical assistance to cover medical expenses incurred by her son during the course of an emergency appendectomy. Defendant denied the application, and plaintiff requested an administrative fair hearing before the New York State Department of Social Services. After the hearing, the Commissioner reversed defendant's determination and directed that the requested medical assistance be provided. The decision was based on an interpretation of state court decisions which had considered the requirements of the provision of the Social Security Act under which plaintiff requested benefits, 42 U.S.C. § 602(a)(8). Plaintiff then filed this independent action in federal court to recover attorney's fees. The merits of plaintiff's underlying claim to the benefits is not before this Court.

## DISCUSSION

As far as can be determined, this case presents a question of first impression for the federal courts. The central issue is whether an individual, who prevailed in state administrative proceedings brought to enforce a federal statutory right protected under 42 U.S.C. § 1983, may thereafter bring an independent action in federal court under 42 U.S.C. § 1988 to recover attorney's fees incurred therein.

■ At the outset the Court denies defendant's Rule 12(b)(1) motion to dismiss on the ground that the Court does have subject matter jurisdiction.[1] To avoid another round of pleadings, however, this Court will consider the question as if a Rule 12(b)(6) motion was before it.

■ For the reasons stated below, the Court dismisses the action for failure to state a cause of action for which relief may be granted.[2]

The relevant portion of 42 U.S.C. § 1988, as amended in 1976, provides:

> In any action or proceeding to enforce a provision of sections 1981, 1983, 1985, and 1986 of this title, ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988 (Supp.1981).

Plaintiff urges this Court to interpret the words "action or proceeding" to include state administrative proceedings where a claimant prevails upon its § 1983 claim, and, because of the satisfied claim, has no need

---

1. Defendant's motion to dismiss for lack of subject matter jurisdiction is not difficult to overcome. The threshold test for whether subject matter jurisdiction exists is whether there exists a nonfrivolous federal question. *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). "Whether there is a claim presenting a federal question and whether that claim is well founded when considered on its merits are two separate and distinct questions." *Junior Chamber of Commerce of Rochester, Inc. v. U.S. Jaycees, Tulsa, Oklahoma*, 495 F.2d 883, 886 (10th Cir. 1974). On the pleadings it is clear the plaintiff states a nonfrivolous federal question as to the proper scope of 42 U.S.C. § 1988.

2. Accordingly, plaintiff's motion for summary judgment is denied. The Court notes, however, that even if it had found that a valid cause of action existed under § 1988, summary judgment for the plaintiff would not be appropriate since questions of material fact exist which must be resolved through further proceedings. *See* Defendant's Local Rule 10(e) Statement.

for a federal court action on the merits. The defendant, while failing to supply this Court with a memorandum of law on its position, undoubtedly contends that "action or proceeding" is restricted to court actions brought to enforce rights under one of the enumerated statutes.

The Supreme Court has recognized consistently that statutes are to be interpreted "not only by a consideration of the words themselves, but by considering, as well, the context, the purposes of the law, and the circumstances under which the words were employed." *Maine v. Thiboutot*, 448 U.S. 1, 13–14, 100 S.Ct. 2502, 2509, 65 L.Ed.2d 555 (1980) (Powell, J., dissenting); *District of Columbia v. Carter*, 409 U.S. 418, 420, 93 S.Ct. 602, 34 L.Ed. 613 (1973). The Second Circuit recently commented on a court's role in statutory interpretation, saying:

> The appropriate methodology, then, is to look to the "common sense" of the statute or regulation, to its purpose, [and] to the practical consequences of the suggested interpretations.

*New York State Commission on Cable Television v. F.C.C.*, 571 F.2d 95, 98 (2d Cir. 1978)

In the present case, the simple language of § 1988 arguably provides a clear interpretation, since it speaks only of "the court" and not of any state or federal administrative proceedings. A recent Supreme Court case interpreting a similarly worded provision in Title VII of the Civil Rights Act, however, casts ambiguity, at the very least, on the meaning of the words "action or proceeding" as used in § 1988.[3] In *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1979), the Supreme Court interpreted the words "action or proceeding" in § 706(k) to include state administrative proceedings which processed employment discrimination com-

plaints. The Court further held, although arguably in *dictum*, that § 706(f)(1) of Title VII, which authorizes suits in federal court to enforce Title VII, encompasses a suit solely to obtain an award of attorney's fees for legal work done in state and local proceedings.[4] Although the Court's opinion in *Gaslight*, given the similarity between § 706(k) of Title VII and § 1988, would seem on its face to support plaintiff's interpretation of § 1988, this Court finds it not controlling in the present case. The strong considerations, based on the statutory remedial scheme of Title VII, which persuaded the Court in *Gaslight* are not present in the instant case.

The Supreme Court in *Gaslight*, after analyzing the statutory remedial scheme of Title VII, relied heavily on requirements under Title VII and EEOC regulations which mandate initial resort to state and local remedial agencies before recourse to federal forums, especially federal court, is proper. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). Throughout Title VII the word "proceeding" is used to describe the state and local remedies to which complainants are required to resort before the EEOC will assume jurisdiction and, after its investigation is completed, either begin enforcement proceedings or issue the "right to sue" letter necessary before individual claimants may bring an action in federal court. 42 U.S.C. 2000e–5(c); 5(f). This detailed remedial scheme which Congress set up when it passed Title VII prompted the Supreme Court to state, "it would be anomalous to award fees [under § 706(k)] to the complainant who is unsuccessful or only partially successful in obtaining state or local rem-

---

**3.** Section 706(k) is the attorney's fees provision of Title VII of the Civil Rights Act and states, "In any action or proceeding under this title the Court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fees as part of the costs." 42 U.S.C. § 2000e–5(k).

**4.** The facts of *Gaslight* show that petitioner did bring suit in federal court on the merits of her claim, and then attached the claim for attorney's fees. As stated by Justice Stevens in his concurrence, the question of whether Congress envisioned a separate action solely for attorney's fees was a question plainly not presented on the record of the case. *Gaslight*, 447 U.S. at 71, 100 S.Ct. at 2035 (Stevens, J., concurring).

edies, but to deny an award to the complainant who is successful in fulfilling Congress' plan that Federal policies be vindicated at the state or local level." 447 U.S. at 66, 100 S.Ct. at 2032.

The distinguishing characteristic between § 706(k) of Title VII and § 1988, however, and thus between *Gaslight* and the instant case, is that no Congressional policy exists under § 1983, or any of the civil rights statutes enumerated in § 1988, which mandates that civil rights claimants initiate their actions at the state or local level before an action in federal court is proper. To the contrary, § 1983 was adopted with the purpose:

> to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance, or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the State agencies.

*Monroe v. Pape*, 365 U.S. 167, 180, 81 S.Ct. 473, 480, 5 L.Ed.2d 492 (1961)

Civil rights claimants are not always free, however, to bring suit in federal court where state administrative remedies exist. *Swan v. Stoneman*, 635 F.2d 97 (2d Cir. 1980). The Second Circuit's strict interpretation of the judicially-created exhaustion of remedies doctrine as applied in civil rights cases might effectually leave complainants with little choice but to exhaust state or local remedies before coming to federal court. *See Swan v. Stoneman*, 635 F.2d 97 (2d Cir. 1980). Other circuits have interpreted Supreme Court cases to not require the exhaustion of state or local remedies before access to federal court is appropriate in civil rights cases. *Green v. Ten Eyck*, 572 F.2d 1233, 1240 (8th Cir. 1978); *McCray v. Burrell*, 516 F.2d 357, 361–65 (4th Cir. 1975) (en banc), *cert. granted*, 423 U.S. 923, 96 S.Ct. 264, 46 L.Ed.2d 249 (1975); *cert. dismissed*, 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976); *Hawkins v. Town of*

*Shaw*, 461 F.2d 1171, 1176 (5th Cir. 1972) (en banc) (Wisdom, J., concurring).

While it can be argued that a court should consider the effects of a judicially-created doctrine such as the exhaustion doctrine when interpreting the scope of a statute, the teachings of the Supreme Court in this instance plainly prohibit such a result. In *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the court considered the propriety of the "private attorney general" exception to the American rule against fee-shifting, and, in reversing a liberal trend among the federal courts to accord broader scope to the exception, stated:

> We do not purport to assess the merits or demerits of the "American Rule" with respect to the allowance of attorney's fees. It has been criticized in recent years, and courts have been urged to find exceptions to it. It is also apparent from our national experience that the encouragement of private actions to implement public policy has been viewed as desirable in a variety of circumstances. But the rule followed in our courts with respect to attorney's fees has survived. It is deeply rooted in our history and in congressional policy; *and it is not for us to invade the legislature's province by redistributing litigation costs* in the manner suggested by respondents and followed by the Court of Appeals. (emphasis added)

*Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 270–71, 95 S.Ct. 1612, 1628, 44 L.Ed.2d 141 (1975). This Court, then must be circumspect in interpreting § 1988 so as not to invade the province of Congress by expanding the statute beyond its intended scope. Accordingly, the Court will not consider the effect of the judicially-created exhaustion of remedies doctrine on the access to federal court by civil rights claimants for in the area of attorney's fees the important consideration is what Congress has designed for a civil rights remedial scheme.[5] For

---

5. Indeed, the Civil Rights Attorney's Fees Awards Act of 1976, which amended § 1988, was passed in response to the Supreme Court's decision in *Alyeska*. Since Congress has taken the lead in this area, as suggested by the Court's opinion in *Alyeska*, Federal Courts

these reasons *Gaslight* is distinguished from the present case.

The legislative history of § 1988 also fails to support plaintiff's construction of the statute. The legislative history is devoid of any discussion of state or federal administrative proceedings. The stated purpose in the Senate Report says in relevant part:

> This amendment to the Civil Rights Act of 1866, Revised Statutes Section 722, gives the Federal courts discretion to award attorney's fees to prevailing parties in *suits* brought to enforce the civil rights acts which Congress has passed since 1866. (emphasis added)

S.Rep.No.94–1011, 94th Cong., 2d Sess. 1 (1976), *reprinted in* [1976] U.S.Code Cong. & Ad.News 5908, 5909.

The Senate Report statement reads further:

> In many cases arising under our civil rights laws, the citizen who must *sue* to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to *vindicate their right in court.* (emphasis added)

S.Rep.No.94–1011, 94th Cong., 2d Sess. 2 (1976), *reprinted in* [1976] U.S.Code Cong. & Ad.News 5908, 5910. This Court concludes, therefore, that in light of the legislative history of § 1988, the absence of any express intent by Congress to extend the scope of § 1988 to include the instant case, the teachings of *Alyeska Pipeline Co.*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), and the differing statutory remedial structures between Title VII and the civil rights statutes enumerated in § 1988, that no valid cause of action exists under § 1988 for an award of attorney's fees to prevailing parties in state administrative proceedings where recourse to federal court on the merits of the civil rights claim is not necessary or available.

In rendering this decision this Court recognizes the practical effects that this construction of § 1988 can have. First, claimants where not barred in those jurisdictions with a strict exhaustion of remedies doctrine may avoid state and local remedies and immediately file suit in federal court on the merits of their claim to protect any possible claim of attorney's fees if they should prevail. Second, some unfairness may result as complainants with meritorious claims who succeed in state administrative proceedings are denied any possible action for attorney's fees in federal court, while those claimants with equally or less meritorious claims who lose in administrative proceedings but happen to prevail in federal court are granted attorney's fees.

Third, the Supreme Court's recent decisions in *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), and *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), may compound the problem. In those decisions, the Court extended the scope of § 1983 to include claims based on purely statutory violations of federal law, and accordingly extended the scope of § 1988 to include the new actions under § 1983. Since many federal statutory rights, such as the one involved in the present case, are left to state administrative bodies to implement, it seems probable that the frequency of cases with factual patterns similar or identical to the present case will increase. While this Court's construction of § 1988 embodied in this decision may well be burdensome and onerous to both litigants and the federal courts, this Court does not deem it within its province to alleviate them by expanding on the scope of civil rights legislation. The task of clarifying the proper scope of the Civil Rights Attorney's Fees Act of 1976 is more properly left to the federal legislature.

The complaint is dismissed for failure to state a claim upon which this Court may grant relief.

IT IS SO ORDERED.

must be sure to only implement what Congress intended and no more. If further clarification is needed, it should come from Congress.