In re Sarah Ann HORACEK, et al.;
United States, Intervenor,

v.

Charles THONE, et al., Appellees,

Richard Douglas McClain, Attorney for
James Michael Jonas, Appellant.

No. 82–2384.

United States Court of Appeals,
Eighth Circuit.

Submitted June 22, 1983.
Decided June 30, 1983.

---

Paul L. Douglas, Atty. Gen., Melvin K. Kammerlohr, Asst. Atty. Gen., Lincoln, Neb., for appellees.

Richard Douglas McClain, Lincoln, Neb., for appellant James Michael Jonas.

Before BRIGHT, ROSS and JOHN R. GIBSON, Circuit Judges.

ROSS, Circuit Judge.

Attorney Richard McClain appeals the district court[1] denial of his application for attorney fees. McClain seeks fees under the consent decree entered in the case of *Horacek v. Exon,* Civil No. 72–L–299 (D.Neb.1975). The district court denied McClain's application on the ground that the court lacks the authority to grant the fees under the decree, statutes and case law. We affirm.

1. The Honorable Albert G. Schatz, United States District Court for the District of Nebraska.

I.

The instant litigation is based on the case of *Horacek v. Exon,* Civil No. 72–L–299 (D.Neb.1975). That case was brought under the Civil Rights Act against state officials by certain parents of and on behalf of the residents of the Beatrice State Home. The plaintiffs alleged that the conditions of confinement there were violative of the eighth amendment's ban on cruel and unusual punishment. The parties eventually entered into a consent decree approved by the district court on October 31, 1975. The consent decree provided, among other things, for periodic evaluations to determine the most appropriate manner to transfer residents of the Beatrice State Home (Beatrice) to community based mental health facilities. It provided that in the event that either the parent or legal guardian of any resident of the home objected to such a transfer, a due process hearing must be held before the State Department of Public Institutions (DPI). Paragraphs 19 through 22 of the consent decree set out the standards for the administrative hearings, including a requirement that the DPI appoint competent counsel to represent the interests of each Beatrice resident.

James M. Jonas has been a resident-patient of Beatrice since sometime prior to May 20, 1954. Gerald Jonas is James' father and guardian. Early in 1978, Gerald Jonas was notified that Beatrice planned to transfer James to a community based program. The elder Jonas hired attorney McClain to represent James' parents in the prehearing placement proceedings before the DPI. McClain then requested the DPI to furnish James with counsel to represent his interests at the hearing. McClain asked that he be appointed as such counsel.

The DPI initially took the position that it was not required under the *Horacek* consent decree to appoint counsel to represent James, but subsequently reversed that position when the office of the Attorney General of the State of Nebraska informed DPI

that its interpretation of *Horacek* required the Attorney General to do so. However, because DPI lacked budgetary authorization to pay attorney fees and no statutory authority existed under Nebraska law to allow for the taxation of attorney fees against the state in this situation, DPI attempted to fulfill its responsibility to appoint counsel for James by seeking the aid of the Southeast Nebraska Legal Services Agency, the Lancaster County Public Defender, the County Attorney for James' home county, the Department of Welfare's Advocacy Program for the Developmentally Disabled, and finally the President of the Gage County Bar Association. It would appear that the Gage County Bar Association was successful in providing the DPI hearing examiner who was to preside at the hearing with the names of two attorneys willing to be appointed to represent James. It would further appear that the DPI was successful in finding limited budgetary appropriations for attorney fees and set a $350 fee limit for the attorneys willing to be appointed to represent Beatrice residents at due process hearings held by the DPI.

However, before the hearing examiner could appoint counsel as requested by DPI, Gerald Jonas requested the County Court of Dakota County to appoint McClain as both attorney and guardian ad litem for James "at government expense" to represent him in the deinstitutionalization hearing. On June 9, 1978, the county court granted the application and appointed McClain "to act as attorney and guardian ad litem for James Jonas at government expense." Thereafter, the DPI objected to the county court order appointing McClain, contending that the county court had no jurisdiction in matters relating to compliance with the consent decree in *Horacek* and furthermore that McClain, as attorney for the parents of James Jonas, who opposed community placement for James, represented interests which the *Horacek* consent decree recognized may be in conflict with the best interests of James himself and, therefore, could not represent both the interests of the parents and the interests of James at the due process hearing.

The county court overruled the objections of the DPI and entered another order confirming McClain's appointment. The due process hearing was conducted with McClain acting as attorney for both James and his parents, who opposed community placement. After the hearing, McClain applied for attorney fees in the county court in which he was appointed, and the County Court judge found that fees in the sum of $3,100 should be allowed, but that the fees should not be paid by Dakota County and "were the expense of some other governmental body." McClain appealed to the state district court which ruled that the county court did not have subject matter jurisdiction of the original appointment of McClain. McClain then appealed to the Nebraska Supreme Court which held that the county court lacked the authority to appoint a guardian ad litem for James or to fix fees in the manner in which it did. See *In Re Guardianship of Jonas,* 211 Neb. 397, 318 N.W.2d 867 (1982). On his appeal to the Nebraska Supreme Court, McClain argued that the action of the county court was justified under several Nebraska statutes, not the *Horacek* consent decree, but the court rejected his arguments and concluded that it was "unable to find any statutory authority to justify the action taken by the county judge in this case." 211 Neb. at 401, 318 N.W.2d 867. The supreme court also noted that while "every court has inherent power to appoint a guardian ad litem to represent an incapacitated person in proceedings before that court, that power does not extend to the appointment of such guardian for the purpose of managing litigation in another court or tribunal except for necessary appeals." (Citation omitted.) *Id.*

After his denial in state court, McClain applied for attorney fees in the United States District Court, urging that the federal court had the authority to award them under the *Horacek* consent decree. He relied on paragraph 8 of the court's decree of October 31, 1975, which states:

> 8) Jurisdiction is retained by this Court until further order. Any party may

apply at any time for such further order as may be necessary or appropriate for the construction or implementation of this Decree or for the enforcement of this Decree. Any party may move for such further relief as the interests of justice in this case may require.

He also cited paragraph 19 of the August 6, 1975 agreement, which allows a member of the class to move for relief in the district court in the event that the DPI should refuse to appoint counsel for a class member in a due process hearing. The district court denied McClain's application, noting that he never sought appointment, nor was he ever appointed by that court under the consent decree.

## II.

McClain now argues that the court erred by not granting the fees under *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). There the Supreme Court held that under Title VII, a federal court may allow the prevailing party attorney fees for legal services performed in prosecuting an employment discrimination claim in state administrative and judicial proceedings that Title VII requires federal claimants to invoke. The Court in *Gaslight Club* relied heavily on requirements under Title VII and EEOC regulations which mandate an initial resort to agencies authorized by state and local governments to grant relief, before recourse to federal forums is proper. 447 U.S. at 62–63, 100 S.Ct. at 2030. The Court reasoned that if Congress included administrative proceedings as a necessary element of the Title VII enforcement scheme, it must also have intended the attorney fees provision of Title VII to authorize an award of fees to plaintiffs who do not need to file a civil complaint on the merits of their Title VII claim because they have substantially prevailed in an administrative proceeding.

■ McClain submits that 42 U.S.C. § 1988 supplies the statutory authority for attorney fees in this case. The relevant part of section 1988 provides:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

McClain urges this court to extend the *Gaslight Club* rationale to cases falling under section 1988. He argues that the language "any action or proceeding" is sufficiently broad to cover the state administrative proceeding in which he participated. McClain's reliance on *Gaslight Club* is misplaced. Although the language of section 706(k) of Title VII and section 1988 are similar, the *Gaslight Club* rationale is not controlling here. The reason is that unlike Title VII "no Congressional policy exists under * * * any of the civil rights statutes enumerated in § 1988, which mandates that civil rights claimants initiate their actions at the state level before an action in federal court is proper." *Derheim v. Hennepin County Bureau of Social Services,* 524 F.Supp. 1321, 1324 (D.Minn.1981), *aff'd on other grounds,* 688 F.2d 66 (8th Cir.1982).

■ Furthermore, section 1988 itself does not create an independent right of action to recover attorney fees.

In *Moor v. County of Alameda,* 411 U.S. 693, 98 S.Ct. 1785, 36 L.Ed.2d 596 (1973), a case decided prior to the 1976 amendment which added the attorneys' fees provision to section 1988, the Supreme Court ruled that section 1988 does not create a right of action. Its function is to authorize remedies for violations of the other civil rights statutes.[3] The language of the 1976 amendment adding the attorney's fees provision gives no basis for deviating from the conclusion reached in *Moor v. County of Alameda.* The provision allows recovery of attorney's fees "as a part of the costs" awarded "[i]n any action or proceeding to enforce [a provision of the] Civil Rights Act of 1964." By its terms, it does not contemplate an independent action solely to recover attorney's fees. Moreover, the legislative his-

tory makes it clear that the attorney's fees provision is part of the remedy only.

The purpose and effect of S. 2278 are simple—it is designed to allow courts to provide *the familiar remedy* of reasonable counsel fees to prevailing parties in suits to enforce the civil rights acts which Congress has passed since 1866. S.Rep. No. 94–1011, 94th Cong., 2d Sess. 2 (1976), *reprinted in* [1976] U.S.Code Cong. & Ad.News 5908, 5909–10 (emphasis added).

[3] This holding was reaffirmed after the 1976 amendment to *Monell v. Department of Social Services,* 436 U.S. 658, 701 [98 S.Ct. 2018, 2041, 56 L.Ed.2d 611] n. 66.

524 F.Supp. at 1325.

The Third Circuit very recently addressed similar contentions in *Latino Project, Inc. v. City of Camden,* 701 F.2d 262 (3d Cir.1983). The issue before the court in *Latino Project* was whether, in addition to civil lawsuits, section 1988 authorizes an award of attorney fees to plaintiffs who substantially prevail in administrative proceedings without filing a civil complaint on the merits. Using the same rationale as the district court in the instant case, the Third Circuit held:

Despite the literal ambiguity of the words "civil action or proceeding," the statutory context of those words indicates that Congress intended section 1988 to authorize an award of attorney's fees only to a party who substantially prevails on a civil rights claim in a lawsuit.

*Id.* at 264. That court also declined to expand the rationale of *Gaslight Club* to include section 1988.

The provision of the consent decree requiring appointment of counsel to represent the mentally retarded class members in the due process hearings does not provide for compensation for appointment of counsel, and there is no other statutory basis for recovery of fees in this case. Accordingly, we affirm the judgment of the district court.