NORTH CAROLINA DEPARTMENT OF TRANSPORTA-
TION ET AL. *v.* CREST STREET COMMUNITY
COUNCIL, INC., ET AL.

No. 85–767.   Argued October 7, 1986—Decided November 4, 1986

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, POWELL, STEVENS, and SCALIA, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which MARSHALL and BLACKMUN, JJ., joined, *post*, p. 16.

*Lacy H. Thornburg*, Attorney General of North Carolina, argued the cause for petitioners. With him on the briefs was *James B. Richmond*, Special Deputy Attorney General.

*Richard J. Lazarus* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Fried, Assistant Attorney General Reynolds, Deputy Solicitor General Kuhl*, and *Brian K. Landsberg*.

*Michael D. Calhoun* argued the cause for respondents. With him on the brief was *Alice A. Ratliff*.

JUSTICE O'CONNOR delivered the opinion of the Court.

This case presents the question whether a court may award attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U. S. C. § 1988, in a separate federal action not to enforce any of the civil rights laws listed in § 1988, but solely to recover attorney's fees.

I

In 1957, the Durham City Council advised the North Carolina State Highway Commission of the need for a major east-west expressway in the city. North Carolina Department of Transportation and Federal Highway Administration, Final Environmental Impact Statement No. FHWA–NC–EIS–72–

8

13–F, Historical Resume 15 (1982). Over the years parts of this highway were completed. In 1976, petitioner North Carolina Department of Transportation (NCDOT) resumed planning an extension of the east-west highway. The proposed extension was to run through the Crest Street community, an established, predominantly black neighborhood in Durham. The extension would have displaced the community park and church and many of the residents of the neighborhood. Respondents, Residents of Crest Street Community and the Save Our Church and Community Committee, two unincorporated associations, retained the North Central Legal Assistance Program to represent them in regard to the proposed highway extension. Despite respondents' opposition to the extension plans, petitioners issued a revised draft Environmental Impact Statement that continued to propose that the extension run through the Crest Street community. App. 57.

The costs of the proposed extension were to be covered in large part by federal funds. Title VI of the Civil Rights Act of 1964 prohibits "any program or activity receiving Federal financial assistance" from discriminating on the basis of race, color, or national origin, 42 U. S. C. § 2000d, and directs each federal agency authorized to extend federal financial assistance to issue regulations to effectuate this mandate, § 2000d–1. Compliance with § 2000d may be effected by the termination of federal funds, or by any other means authorized by law; however, "no such action shall be taken until the department or agency concerned has advised the [recipient] of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means." § 2000d–1.

Pursuant to Title VI, the Department of Transportation (DOT) promulgated regulations requiring recipients of federal funds to provide assurances of compliance, periodic compliance reports, and access to information relevant to compliance. 49 CFR § 21.9 (1985). DOT regulations also state

that "[a]ny person who believes himself or any specific class of persons to be subjected to discrimination prohibited by [Title VI and the DOT regulations] may . . . file with the Secretary a written complaint." § 21.11(b). The Secretary is required to investigate "whenever a compliance review, report, complaint, or any other information indicates a possible failure to comply with this part." § 21.11(c).

In September 1978, respondents filed a complaint with DOT. App. 73–89. Respondents challenged petitioners' proposed extension as violative of Title VI, and requested that NCDOT be prohibited from planning or constructing the proposed highway through the Crest Street community. DOT conducted an investigation, met with representatives of petitioners and of respondents, and obtained documents from petitioners and respondents. In February 1980 the DOT Director of Civil Rights informed NCDOT that based on DOT's "preliminary judgments," there was "reasonable cause to believe that the construction of the Expressway along the alignment proposed in the Draft [Environmental Impact Statement] would constitute a prima facie violation of Title VI and, in particular, Section 21.5(b)(3) of our Departmental Title VI regulation." *Id.*, at 97–99. DOT urged petitioners to attempt to negotiate a resolution to the controversy. After negotiations spanning 15 months, in February 1982, petitioners, respondents, and the city of Durham reached a preliminary agreement on the highway design and mitigation of the adverse impact of the project, but continued to negotiate toward a final plan.

Since 1973, construction of the highway extension had been enjoined by an order entered in the unrelated proceedings in *ECOS, Inc.* v. *Brinegar*, No. C–352–D–72 (MDNC, Feb. 20, 1973). The plaintiffs in *ECOS* were a nonprofit educational ecological organization, an association of Duke University students and some of its members, and two Durham residents. The action alleged violations of the Federal-Aid Highway Act, 23 U. S. C. §§ 128, 138, the Department of

Transportation Act of 1966, 49 U. S. C. App. § 1653(f), and the National Environmental Policy Act of 1969, 42 U. S. C. § 4332. The order enjoined construction until the defendants, state and federal transportation officials and a construction company, achieved full compliance with the above statutes. In August 1982 NCDOT moved to dissolve the *ECOS* injunction. Respondent Crest Street Community Council, Inc., and an individual Crest Street resident moved to intervene in the *ECOS* action and filed a proposed complaint asserting Title VI violations. App. 103–107. While the motion to intervene was pending, petitioners and respondents continued negotiations, and reached agreement on a Final Mitigation Plan. On December 14, 1982, the District Court entered a consent judgment in the *ECOS* action. The consent judgment dissolved the injunction and dismissed the action. It also dismissed with prejudice respondents' Title VI claims on the condition that petitioners implement the Final Mitigation Plan, although the District Court had never ruled on the Crest Street Community Council, Inc., motion to intervene. The following day the Final Mitigation Plan was formally executed by petitioners, respondents, and the city of Durham.

The Plan set out comprehensive requirements for NCDOT and the city of Durham to mitigate the impact of the highway. Under the Plan NCDOT agreed to move the proposed highway right-of-way and modify an interchange so as to preserve the community church and park. The Plan also required NCDOT and the city of Durham to develop and provide a new park and community site in the same area. Respondents' counsel had spent more than 1,200 hours over the course of five years on this project, preparing the administrative complaint, assisting the DOT investigation, actively participating in negotiations to resolve the dispute, and informing DOT on the progress of those negotiations. The result of this diligent labor was both substantial and concrete.

Under the Plan, respondents stated that they did not waive any right to attorney's fees, and the city of Durham and NCDOT denied liability for attorney's fees. Respondents filed an action in District Court for attorney's fees under 42 U. S. C. § 1988. On cross-motions for summary judgment, the District Court granted petitioners' motion and dismissed the action. 598 F. Supp. 258 (MDNC 1984). On appeal, the Court of Appeals reversed and remanded. 769 F. 2d 1025 (CA4 1985). The Court of Appeals concluded that the explicit language of § 1988 allowing recovery of attorney's fees by a "prevailing party" in a "proceeding to enforce . . . [T]itle VI of the Civil Rights Act of 1964" covered the actions taken by respondents subsequent to the filing of the administrative complaint. *Id.*, at 1028. The Court of Appeals then considered whether respondents could bring an independent action "solely to recover fees for an administrative complaint that has already been settled." *Id.*, at 1033. The Court of Appeals held that § 1988 allowed a separate action for fees, although it acknowledged the contrary holdings of other courts. See *Horacek* v. *Thone*, 710 F. 2d 496, 499 (CA8 1983); *Estes* v. *Tuscaloosa County*, 696 F. 2d 898, 901 (CA11 1983); *Latino Project, Inc.* v. *City of Camden*, 701 F. 2d 262 (CA3 1983). We granted certiorari, to resolve the Circuit conflict, 474 U. S. 1049 (1986), and now reverse.

II

In cases in which civil rights litigation was preceded by administrative proceedings, this Court has had occasion to consider whether the court in the civil rights action could award attorney's fees for time spent in the particular administrative processes. *Webb* v. *Dyer County Board of Education*, 471 U. S. 234, 241 (1985) (state tenure rights hearing is not a proceeding to enforce 42 U. S. C. § 1983); *New York Gaslight Club, Inc.* v. *Carey*, 447 U. S. 54 (1980) (mandatory state employment discrimination proceedings are proceedings to enforce Title VII). This case presents a question similar

to those raised in *Webb* and *Carey:* whether negotiations subsequent to the filing of a Title VI administrative complaint are, under § 1988, "proceedings to enforce" Title VI. This case also presents a question that had not been posed by our prior § 1988 cases: whether attorney's fees under § 1988 can be sought in a court action *other than* litigation in which a party seeks to enforce the civil rights laws listed in § 1988. Because our resolution of the latter question resolves this case, we do not reach the former.

In pertinent part, the Civil Rights Attorney's Fees Awards Act of 1976, 42 U. S. C. § 1988, provides:

> "In any action or proceeding to enforce a provision of . . . [T]itle VI of the Civil Rights Act of 1964 . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

The plain language of § 1988 suggests the answer to the question whether attorney's fees may be awarded in an independent action which is not to enforce any of the civil rights laws listed in § 1988. The section states that *in the action or proceeding to enforce* the civil rights laws listed—42 U. S. C. §§ 1981, 1982, 1983, 1985, 1986, Title IX, or Title VI—*the court* may award attorney's fees. The case before us is not, and was never, an action to enforce any of these laws. On its face, § 1988 does not authorize a court to award attorney's fees except in an action to enforce the listed civil rights laws.

The legislative history of § 1988 supports the plain import of the statutory language. As we have noted before, the legislative history is replete with references to "the enforcement of the civil rights statutes 'in suits,' 'through the courts' and by 'judicial process.'" *Webb* v. *Dyer County Board of Education, supra,* at 241, n. 16 (quoting S. Rep. No. 94–1011, pp. 2, 6 (1976); H. R. Rep. No. 94–1558, p. 1 (1976)). Moreover, to support its statement that "parties may be considered to have prevailed when they vindicate rights through a

consent judgment or without formally obtaining relief," the Senate Report cited cases that involved at a minimum the filing of a judicial complaint. S. Rep. No. 94–1011, at 5 (citing *Kopet* v. *Esquire Realty Co.*, 523 F. 2d 1005 (CA2 1975); *Parham* v. *Southwestern Bell Telephone Co.*, 433 F. 2d 421 (CA8 1970); *Thomas* v. *Honeybrook Mines, Inc.*, 428 F. 2d 981 (CA3 1970); *Richards* v. *Griffith Rubber Mills*, 300 F. Supp. 338 (Ore. 1969); *Aspira of New York, Inc.* v. *Board of Education of New York City*, 65 F. R. D. 541 (SDNY 1975)). The House Report, even while it stressed that "'prevailing party' is not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits," clearly contemplated that parties obtaining fees would have initiated civil rights litigation:

> "If *the litigation* terminates by consent decree, for example, it would be proper to award counsel fees. A 'prevailing' party should not be penalized for seeking an *out-of-court* settlement, thus helping to lessen docket congestion. Similarly, *after a complaint* is filed, a *defendant* might voluntarily cease the unlawful practice." H. R. Rep. No. 94–1558, at 7 (citations omitted; emphasis supplied).

As in the Senate Report, each of the cases cited by the House Report to support the above statements involved, at a minimum, the filing of a judicial complaint. See *Evers* v. *Dwyer*, 358 U. S. 202 (1958); *Incarcerated Men of Allen County Jail* v. *Fair*, 507 F. 2d 281 (CA6 1974); *Brown* v. *Gaston County Dyeing Machine Co.*, 457 F. 2d 1377 (CA4 1972); *Lea* v. *Cone Mills Corp.*, 438 F. 2d 86 (CA4 1971); *Parham, supra; Parker* v. *Matthews*, 411 F. Supp. 1059 (DC 1976); *Aspira, supra.*

We recognize that dicta in opinions of this Court suggest that the authorization of attorney's fee awards only by a court in an action to enforce the listed civil rights laws would be anomalous. See *Carey*, 447 U. S., at 65–66. But see *id.*, at 71 (STEVENS, J., concurring in judgment) ("Whether Congress intended to authorize a separate federal action solely

14

to recover costs, including attorney's fees, . . . is not only doubtful but is a question that is plainly not presented by this record"). See also *White* v. *New Hampshire Dept. of Employment Security*, 455 U. S. 445, 451, n. 13 (1982). But if one must ignore the plain language of a statute to avoid a possibly anomalous result, " '[t]he short answer is that Congress did not write the statute that way.' " *Garcia* v. *United States*, 469 U. S. 70, 79 (1984), quoting *Russello* v. *United States*, 464 U. S. 16, 23 (1983) (in turn quoting *United States* v. *Naftalin*, 441 U. S. 768, 773 (1979)). The legislative history clearly envisions that attorney's fees would be awarded for proceedings only when those proceedings are part of or followed by a lawsuit.

Moreover, we now believe that the paradoxical nature of this result may have been exaggerated. There are many types of behavior that may lead others to comply with civil rights laws. For example, an employee, after talking to his lawyer, may choose to discuss hiring or promotion practices with an employer, and as a result of this discussion the employer may alter those practices to comply more fully with employment discrimination laws. In some sense it may be considered anomalous that this employee's initiative would not be awarded with attorney's fees. But an award of attorney's fees under § 1988 depends not only on the results obtained, but also on what actions were needed to achieve those results. It is entirely reasonable to limit the award of attorney's fees to those parties who, in order to obtain relief, found it necessary to file a complaint in court.

We have also suggested in past cases that today's holding would create an incentive to file protective lawsuits in order to obtain attorney's fees. See *Carey, supra,* at 66, n. 6. Upon reflection, however, we think that the better view was expressed by our conclusion in *Webb,* 471 U. S., at 241, n. 15, that "competent counsel will be motivated by the interests of the client to pursue . . . administrative remedies when they are available and counsel believes that they may prove

successful." An interpretation of § 1988 cannot be based on the assumption that "an attorney would advise the client to forgo an available avenue of relief solely because § 1988 does not provide for attorney's fees . . . ." *Ibid.* Moreover, our holding creates a legitimate incentive for potential civil rights defendants to resolve disputes expeditiously, rather than risk the attorney's fees liability connected to civil rights litigation.

A court hearing one of the civil rights claims covered by § 1988 may still award attorney's fees for time spent on administrative proceedings to enforce the civil rights claim prior to the litigation. See *Carey, supra* (so holding under identical language of Title VII). Moreover, even if the prior proceeding is not a "proceeding to enforce" one of the § 1988 civil rights laws, the "discrete portion of the work product from the administrative proceedings" that "was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement" can be part of the attorney's fees awarded under § 1988. *Webb, supra,* at 243; see also *Hensley* v. *Eckerhart,* 461 U. S. 424 (1983). Under the plain language and legislative history of § 1988, however, only a court in an action to enforce one of the civil rights laws listed in § 1988 may award attorney's fees.

## III

The Court of Appeals, in an alternative response to the argument that § 1988 does not authorize fee awards in actions other than those to enforce the listed civil rights laws, stated that "[e]ven if some type of court action were required to trigger § 1988's fee provision, [respondents] would still have a claim to fees by virtue of their proposed complaint and motion to intervene in the *ECOS* action." 769 F. 2d, at 1034. This argument misconstrues the flaw in respondents' claim for fees. Whatever respondents' role in the *ECOS* action, and whether or not the *ECOS* action was to enforce Title VI, respondents did not seek attorney's fees *in that action.* Respondents instead agreed that their Title VI claims in their

16

proposed complaint would be dismissed, and brought a completely independent action for attorney's fees. The court that considered the attorney's fees claim was not in an action to enforce Title VI. Whether the court in the *ECOS* action could have awarded attorney's fees to respondents, while doubtful,* is irrelevant. The court that did consider the claim was not authorized under § 1988 to award attorney's fees.

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL and JUSTICE BLACKMUN join, dissenting.

Today the Court holds that litigants, who seek to enforce their rights under Title VI of the Civil Rights Act of 1964 and who prevail in an administrative proceeding expressly created to effectuate enforcement of those rights, cannot bring an action under 42 U. S. C. § 1988 to recoup the costs incurred, including a reasonable attorney's fee for the services that produced the administrative victory. What today's holding ensures is that no challenge brought under a statute covered by § 1988 will ever be settled *without* a court action. Because this holding ignores the past decisions of the Court, the purpose of § 1988, and the burden it places on federal district courts, I respectfully dissent.

*Respondents allege that although the District Court did not rule on respondents' motion, they were made parties to the *ECOS* action by signing the consent judgment, which dismissed with prejudice their Title VI claims. Assuming, *arguendo*, that respondents were made parties to the *ECOS* litigation, the District Court identified only 37 hours of work that was related to the *ECOS* litigation. 598 F. Supp. 258, 266 (MDNC 1984). As to this time, the District Court determined that respondents were not entitled to attorney's fees because they were not prevailing parties in the *ECOS* litigation. The motion to intervene was never ruled on by the *ECOS* court; respondents obtained neither an injunction of the highway extension nor a declaration that petitioners violated Title VI; and the *ECOS* motion had little catalytic effect on the Final Mitigation Plan, the completion of which was imminent before the *ECOS* motion. *Ibid.*

## I

The Court holds that the plain language of § 1988 reveals that an award of attorney's fees is authorized only for parties who substantially prevail on a civil rights claim *in a lawsuit*. This result—with its attendant unnecessary and inefficient consequences—is not compelled by the plain language of the statute.

Section 1988 provides:

> "In any action or proceeding to enforce . . . title VI of the Civil Rights Act of 1964 . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

From this, the Court reasons that § 1988, by its own terms, contemplates that only "the court" which has also entertained the substantive claim of a civil rights violation may award attorney's fees. Plaintiffs who fail to file a lawsuit and who prevail before an administrative agency are therefore prohibited from bringing an independent action for fees.

Certainly nothing in the language of § 1988 requires this outcome. Claimants such as the respondents in this case plainly seek to vindicate their rights under Title VI when they bring an action in federal court to obtain attorney's fees for an administrative victory. The lawsuit for fees which follows the successful pursuit of a claim at the administrative level is part of the "proceeding to enforce" Title VI within the meaning of § 1988, whether it is filed before or after the administrative battle is won. It is still *"the court"* that awards the fees. The so-called independent action for attorney's fees is, as a logical matter, part of the "proceeding to enforce" the civil rights claim involved.

Respondents must pursue in court an award to which they are entitled in enforcing Title VI because the primary adjudicator of the violations, the administrative agency, did not have authority to provide the full range of relief attainable under law. They claim nothing more than the relief

available for Title VI claims upon which they have already prevailed. The attorney's fee provision of § 1988 provides authority for the fee award by using language broad enough to encompass work done in administrative proceedings and specifies the procedure for obtaining such an award, namely, petition to a court.

## II

The Court's position is at odds with the purpose underlying § 1988. Section 1988 is designed to "promote the enforcement of the Federal civil rights acts, as Congress intended, and to achieve uniformity in those statutes and justice for all citizens." H. R. Rep. No. 94–1558, p. 9 (1976). By its enactment, Congress recognized that "fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." S. Rep. No. 94–1011, p. 2 (1976). As this case demonstrates, important civil rights are often vindicated in administrative proceedings. Fee awards are equally essential to effective use of the administrative and judicial fora.

Congress enacted § 1988 specifically in response to this Court's decision in *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240 (1975). In *Alyeska*, the respondent had succeeded in enjoining the Department of Interior from issuing the permits required for the construction of an oil pipeline. Although Congress ultimately amended the Mineral Leasing Act to allow issuance of the permits in question, the Court of Appeals granted the respondent organization's application for attorney's fees on the ground that it had acted as a "private attorney general" advancing a high priority congressional policy. *Wilderness Society* v. *Morton*, 161 U. S. App. D. C. 446, 450–451, 495 F. 2d 1026, 1030–1031 (1974).

This Court reversed that decision, holding that use of the "private attorney general" theory was inappropriate and that "legislative guidance" was necessary before a court could en-

gage in fee shifting. *Alyeska, supra,* at 247. One consequence of this decision was that plaintiffs could no longer recover attorney's fees after prevailing on certain civil rights claims.

As a result, Congress became concerned that private litigants would be completely unable to protect their civil rights without "the opportunity to recover what it costs them to vindicate these rights in court." S. Rep. No. 94–1011, *supra,* at 2. The Senate Report makes this plain:

> "[T]he Committee has found that fee awards are essential if the Federal statutes to which [§ 1988] applies are to be fully enforced. We find that the effects of such fee awards are ancillary and incident to securing compliance with these laws, and that fee awards are an integral part of the remedies necessary to obtain such compliance." *Id.,* at 5 (footnote omitted).

Congress recognized that the promise of a forum for vindication of one's civil rights is meaningless absent an ability to obtain adequate representation, and § 1988 was therefore enacted to "remedy anomalous gaps in our civil rights laws created by the United States Supreme Court's . . . decision in *Alyeska* . . . ." *Id.,* at 1.

The congressional purpose visible in the legislative history of § 1988 militates in favor of allowing an individual action for fees following success in an administrative proceeding to enforce one of the civil rights statutes covered by § 1988. An indigent citizen who cannot afford to hire a lawyer to sue to enforce the civil rights laws is similarly unable to pursue relief before an administrative agency. Allowing an independent action for fees furthers the legislative policy of ensuring statutory compliance by encouraging "vigorous enforcement" actions by private citizens. *Id.,* at 4.

### III

In light of the language and legislative history of § 1988, it is not surprising that past decisions of this Court rejected

today's holding. In *New York Gaslight Club, Inc.* v. *Carey,* 447 U. S. 54 (1980), we held that a state administrative procedure to enforce Title VII constitutes an "action or proceeding" as that phrase is utilized in the Title VII fees provision, 42 U. S. C. § 2000e–5(k), and that the complainant was therefore entitled to attorney's fees for work done in the course of that proceeding. In addition, the Court stated that the availability of attorney's fees in a federal court should not depend upon whether a Title VII claimant prevailed in federal court or before an administrative body. The Court reasoned:

> "It would be anomalous to award fees to the complainant who is unsuccessful or only partially successful in obtaining state or local remedies, but to deny an award to the complainant who is successful in fulfilling Congress' plan that federal policies be vindicated at the state or local level. Since it is clear that Congress intended to authorize fee awards for work done in administrative proceedings, we must conclude that § 706(f)(1)'s authorization of a civil suit in federal court *encompasses a suit solely to obtain an award of attorney's fees for legal work done in state and local proceedings.*" *Id.,* at 66 (footnote omitted; emphasis added).

More recently in *White* v. *New Hampshire Dept. of Employment Security,* 455 U. S. 445 (1982), the Court explained its analysis in *Carey, supra,* observing that "a claimed entitlement to attorney's fees is sufficiently independent of the merits action under Title VII to support a federal suit 'solely to obtain an award of attorney's fees for legal work done in state and local proceedings.'" 455 U. S., at 451–452, n. 13 (quoting *Carey, supra,* at 66).

*Carey* cannot be distinguished from the case before us. Section 1988 employs phraseology virtually identical to that

used in the Title VII fee provision at issue in *Carey*,[1] and the relevant Committee Reports underline Congress' intent to model § 1988 after the Title VII fee provision.[2] Respondents herein prevailed in a federal administrative proceeding to enforce Title VI, and, on the reasoning of *Carey*, they are entitled to reasonable attorney's fees.

## IV

A most troubling effect of the Court's decision is the pointless burden it will place upon federal district courts. Claimants unfettered by a requirement that they exhaust administrative remedies — Title VI claimants are included in this category[3] — will immediately file suit in federal court to protect any possible claim for attorney's fees should they subsequently prevail.

In *Webb* v. *Dyer County Board of Education*, 471 U. S. 234 (1985), the Court held that § 1988 does not mandate an automatic award of fees to a civil rights claimant who prevails in an administrative proceeding. Specifically, the Court required that the proceeding involved be one "to enforce" the underlying civil rights statute. But here the Court has not determined whether the administrative scheme promul-

---

[1] Compare 42 U. S. C. § 2000e–5(k) ("In any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs") with 42 U. S. C. § 1988 ("In any action or proceeding to enforce a provision of . . . Title VI of the Civil Rights Act of 1964 . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs").

[2] See, *e. g.*, S. Rep. No. 94–1011, pp. 4 and 6 (1976) (Title VII cases contain "appropriate [standards]" for the application of § 1988); H. R. Rep. No. 94–1558, p. 8 (1976) (same). See also *New York Gaslight Club, Inc.* v. *Carey*, 447 U. S. 54, 70–71, n. 9 (1980) (Section 1988 is legislation similar in purpose and design to Title VII's fee provision).

[3] See *Guardians Assn.* v. *Civil Service Comm'n of New York City*, 463 U. S. 582, 593–595 (1983) (WHITE, J.); *Cannon* v. *University of Chicago*, 441 U. S. 677, 710–716 (1979); *University of California Regents* v. *Bakke*, 438 U. S. 265, 419–421, and n. 28 (1978) (STEVENS, J.).

gated by the United States Department of Transportation is a "proceeding to enforce . . . Title VI." Instead the Court sweeps aside the possibility of fees in *any* administrative proceeding—whether mandatory or optional, whether integral or peripheral to an enforcement scheme—unless the complainant files a concurrent lawsuit alleging the same civil rights violations. Unless such a complaint is filed in court, success at the administrative level *automatically* precludes any subsequent action for fees.

This bright-line solution to the problem of when fees may be awarded for work done in an administrative proceeding is achieved at great cost. First, the Court's rule allows differential treatment of civil rights claimants who prevail at the administrative level solely as a function of the existence (or lack thereof) of a civil complaint. Unfairness results when "complainants with meritorious claims who succeed in . . . administrative proceedings are denied any possible action for attorney's fees in federal court, while those claimants with equally or less meritorious claims who lose in administrative proceedings but happen to prevail in federal court are granted attorney's fees." *Blow* v. *Lascaris,* 523 F. Supp. 913, 917 (NDNY 1981), aff'd, 668 F. 2d 670 (CA2), cert. denied, 459 U. S. 914 (1982).[4]

---

[4] The Court points out that "[t]here are many types of behavior that may lead others to comply with civil rights laws," *ante,* at 14, such as informally discussing employment practices with an employer after consulting an attorney. The suggestion is that it is no more logically anomalous to refuse to provide fees for an informal initiative than to refuse to do so for work in a successful administrative proceeding. However, Congress has not drawn the line between court action and all other activity, but has chosen to allow fees for participation in "proceeding[s]" while neglecting to do so for informal initiatives. Under these circumstances, it *is* anomalous to award fees to administrative participants who file civil complaints while withholding fees from identically situated administrative participants who do not. The proper analogy, using the Court's example, would be an award of fees for informal initiatives which occur while a complaint is pending and a refusal to award fees for informal initiatives when no civil action has been filed.

Second, despite the Court's statement to the contrary, the new rule *will* "create an incentive to file protective lawsuits in order to obtain attorney's fees." *Ante*, at 14. Of course, as the Court observes, "competent counsel will . . . pursue . . . administrative remedies when they are available and counsel believes they may prove successful," *Webb*, 471 U. S., at 241, n. 15. Simultaneously, however, counsel will file a court action to ensure that he or she will be eligible for an attorney's fee even if success comes in the administrative forum. One need not assume that "an attorney would advise the client to forgo an available avenue of relief solely because § 1988 does not provide for attorney's fees," *ibid.*, to conclude that this holding will encourage responsible attorneys to file civil complaints. No avenue of relief need be forgone; rather two avenues must be concurrently (or alternately) pursued.[5]

Moreover, Congress has explicitly recognized that complainants who seek to vindicate their civil rights are often unable to obtain representation without the prospect that an attorney's fee will accompany a successful outcome.[6] This is

---

[5] As a practical matter, the Court's position will lead civil rights claimants to do the following: (1) file a federal civil action, (2) pursue the available administrative agency remedy, (3) obtain a stay from the federal district court, and (4) return to federal court to file a fee petition after prevailing before the agency. Under these circumstances, there will rarely be any doubt that some portion of the work before the agency was "both useful and of a type ordinarily necessary" to successful litigation of the case. *Webb* v. *Dyer County Board of Education*, 471 U. S., at 243. Consequently, some fee award should ordinarily be allowed.

The use of the above procedure should not be encouraged; it is wasteful and not required by the statutory language.

[6] This concern is echoed many times over in the legislative history of the Civil Rights Attorney's Fees Awards Act. See 122 Cong. Rec. 35128 (1976) (remarks of Rep. Seiberling) ("Unless you can get adequate legal representation, the civil rights laws are just a lot of words"); *id.*, at 33313 (remarks of Sen. Tunney) ("Unless effective ways are found to provide equal legal resources, the Nation must expect its most basic and fundamental laws to be objectively repealed by the economic fact of life that the people these laws are meant to benefit and protect cannot take advantage of them. Attorneys' fees have proved one extremely effective way to provide these equal legal resources . . .").

as true for complainants seeking relief at the administrative level as it is for those filing federal lawsuits. It is entirely reasonable for an attorney whose only source of payment will be court-awarded fees to select that forum rather than the administrative forum, particularly if the only other option is failing to pursue the case at all. As the Court stated in *Carey*, "[t]he existence of an incentive to get into federal court, such as the availability of a fee award, would ensure that almost all Title VII complainants would abandon state proceedings as soon as possible." 447 U. S., at 66, n. 6. Now the Title VI claimant may choose to bypass administrative mechanisms altogether, since their exhaustion is not mandatory, and file a complaint in federal court to assure himself or herself of attorney's fees upon prevailing. The court's inability to entertain a separate action for fees "will promote such a bypass." Parness & Woodruff, Federal District Court Proceedings to Recover Attorney's Fees for Prevailing Parties on Section 1983 Claims in State Administrative Agencies, 18 Ga. L. Rev. 83, 95 (1983).

Nor will this holding allow the courts to evade a series of determinations as to which administrative schemes create "proceeding[s] to enforce" the civil rights statutes covered by § 1988. Once this decision is handed down, "competent counsel," *Webb, supra,* at 241, n. 15, will file a civil complaint *and* seek relief at the administrative level in any civil rights action included in § 1988. When these complainants return to federal court after pursuit of administrative remedies, the courts will then be forced to confront the question of which administrative schemes constitute "proceeding[s] to enforce" the relevant civil rights statutes.

Finally, the holding will not, as the Court suggests, "creat[e] a legitimate incentive for potential civil rights defendants to resolve disputes expeditiously, rather than risk the attorney's fees liability connected to civil rights litigation." *Ante,* at 15. The Court incorrectly assumes that claimants seeking administrative relief will not file protective civil com-

plaints. In fact, plaintiffs' attorneys will file complaints that lie dormant during the course of any administrative proceedings, so that they may ultimately claim either that they were engaged in a "proceeding to enforce" the statute in question under § 1988, or that the time spent in the administrative forum was "both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement." *Webb, supra,* at 243. See also *Hensley* v. *Eckerhart,* 461 U. S. 424 (1983). Thus, after the decision in this case, defendants will remain at risk of incurring liability for fees while the administrative process in question runs its course.

Initial resort to the administrative forum and the settlement of claims by the agency should be encouraged, not discouraged. Congress explicitly stated that "[a] 'prevailing party' should not be penalized for seeking an out-of-court settlement, thus helping to lessen [court] congestion." H. R. Rep. No. 94–1558, p. 7 (1976). Although this statement was made with reference to the postcivil complaint settlement process, its logic has equal force where utilization of the administrative process could eliminate the need for court action.

In my view, it is pointless formalism to treat differently a federal action stayed until completion of the administrative process and resuscitated for a fee award, and a federal action filed after administrative victory.[7]

---

[7] The Court fails to reach respondents' claim that they are entitled to fees by virtue of their proposed complaint, motion to intervene, and participation in the consent judgment in *ECOS, Inc.* v. *Brinegar,* No. C–352–D–72 (MDNC, Feb. 20, 1973). The Court reasons that, even if the District Court entertaining the *ECOS* action could have awarded fees to respondents, this independent action for fees cannot survive because the court that entertains the initial civil rights complaint is the *only* court that may award attorney's fees to a successful complainant.

It is worth noting that the parties agreed in the consent judgment that respondents' Title VI claim would be dismissed with prejudice, but that this disposition was *without prejudice* to respondents' right to pursue

V

I can see little good and some significant harm emerging from today's decision. Civil rights complainants are now on notice that they must file a civil lawsuit to have any hope of obtaining attorney's fees upon prevailing in an administrative enforcement proceeding. The bad news for federal district courts is that counsel will inevitably file such suits. Because the language and purpose of § 1988 allow an independent action to obtain fees for work done at an administrative proceeding to enforce Title VI, and because I believe the contrary holding has mischievous consequences, I dissent.

---

attorney's fees. Hence, the Court holds not only that prevailing complainants must file a civil complaint in order to obtain fees, but also that parties may not *agree* in one action to allow pursuit of fees in a separate action.