**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Chester FERNANDO,
Defendant-Appellee.**

No. 83–2178.

United States Court of Appeals,
Tenth Circuit.

Oct. 11, 1984.

Jeffrey J. Dempsey of Davis & Dempsey, Albuquerque, N.M., for defendant-appellee.

William L. Lutz, U.S. Atty., and Richard J. Smith, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff-appellant.

Before SETH, LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the

determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The case is therefore ordered submitted without oral argument.

The United States appeals from the district court's dismissal of a one-count indictment charging defendant Chester Fernando with violating 18 U.S.C. § 649. That section imposes criminal liability on one who does not deposit "money of the United States" in his possession or control when he has a duty to make the deposit. The only issue on appeal is whether the trial court erred in holding that "money," as used in that penal statute, does not include checks payable to the United States.

The material facts are uncontested. A federal grand jury in New Mexico charged defendant with violating 18 U.S.C. § 649(a) and (b) based on his asserted failure to deposit, as required by law, checks totalling approximately $786,865.66. These checks, payable to the United States government, came into defendant's possession and control while he was acting in an official capacity with the Bureau of Indian Affairs. There is no allegation that defendant converted or otherwise attempted to negotiate these checks. The government asserts that defendant simply "pigeon-holed" the checks, which he received over the years, in various places in his office and work area. Both parties agree that defendant failed to deposit the checks in a timely fashion.

Defendant promptly moved for dismissal of the indictment on the grounds, *inter alia*, that these checks were not "money of the United States" within the terms of 18 U.S.C. § 649. After hearing argument, the district court accepted defendant's reading of the statute and dismissed the indictment. The United States appealed the decision, as permitted by 18 U.S.C. § 3731.

The provision at issue, 18 U.S.C. § 649(a), provides, as relevant, that

"[w]hoever, having money of the United States in his possession or under his control, fails to deposit it ... when required so to do ... is guilty of embezzlement, and shall be fined in a sum equal to the amount of money embezzled or imprisoned not more than ten years, or both ...."

That section and its predecessors have referred to "money" or "moneys" since at least 1846, *see* 9 Stat. 59, 63; yet quite surprisingly whether the term "money" includes checks apparently is an issue of first impression in this or any other federal court. The district court adopted the definition of the term as contained in the Uniform Commercial Code: "[A] medium of exchange authorized or adopted by a domestic or foreign government as part of its currency." U.C.C. § 1–201(24). *Black's Law Dictionary* defines "money" similarly: "In usual and ordinary acceptation it means coins and paper currency used as circulating medium of exchange, and does not embrace notes, bonds, evidences of debt, or other personal or real estate." *Black's Law Dictionary* 906 (Rev. 5th ed. 1979).

We begin our analysis by recognizing that it has long been settled that " 'penal statutes are to be construed strictly,' ... and that one 'is not to be subjected to a penalty unless the words of the statute plainly impose it.' " *United States v. Campos-Serrano*, 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971), quoting respectively *FCC v. American Broadcasting Co.*, 347 U.S. 284, 296, 74 S.Ct. 593, 600, 98 L.Ed. 699 (1954) and *Keppel v. Tiffin Savings Bank*, 197 U.S. 356, 362, 25 S.Ct. 443, 445, 49 L.Ed. 790 (1905). The words of § 649 do not plainly impose liability for failing to deposit negotiable documents. As noted, we have found no cases that provide guidance as to the scope of the definition of the word "money" as used in the statute.

The rule of strict construction of criminal statutes "does not mean that every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature." *United States v. Bramblett*, 348 U.S. 503, 510, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955) (footnote omitted). The Court in *Bramblett* noted that when an absolute reading

of a statutory provision is inconsistent with the statute's clear congressional purpose a less literal construction must be given to the statute. *Id.* at 509, 75 S.Ct. at 508. We have found no legislative history, nor has the United States or defendant cited any to us, that would help determine whether Congress intended the statute to apply only to currency or more broadly.

Nevertheless, we find persuasive defendant's argument that a logical basis exists to infer that Congress intended the statute to apply only to currency, rather than checks and other negotiable instruments. First, the term "money" has been in the statute for a long time, from a period during which checks were not used as commonly as today; Congress has changed this act several times but never expanded the term.[1] Second, state courts have interpreted "money" in somewhat analogous criminal statutes as not including checks. *State v. Pittman,* 9 Ohio St.2d 186, 224 N.E.2d 913 (1967); *Airhart v. State,* 388 So.2d 211 (Ala.App.1979). *Cf. United States v. Smith,* 152 F. 542 (W.D.Ky.1907) ("monies, funds and credits" distinguished, money limited to "the currency or circulating medium of the country"); *Worley v. United States,* 340 F.2d 500 (9th Cir.1965) ("money" under Internal Revenue Code limited to "the kind one could bite, feel or pinch" not including the "right to receive money"). Third, and most importantly, Congress could have envisioned that a much greater harm would result if a government official failed to deposit currency than if the same official failed to deposit negotiable documents such as checks. In the case of currency, its immediate liquidity provides the official with a variety of uses for the money, none of which could be traced so long as the official ultimately deposits the money. In the case of checks, however, the government official has little opportunity to misuse the funds they represent without negotiating the checks. Once the checks are negotiated, ample evidence would exist from which the government could bring an independent claim for conversion. *See* 18 U.S.C. § 641 (proscribing the embezzlement, theft, or conversion of "any record, voucher, money, or thing of value to the United States"). Thus, it may be fair to assume that Congress, perceiving the possibility that misuse of currency could occur more easily, intended the scope of § 649 to be restricted to currency only and not to include negotiable documents. Finally, the existence of other criminal statutes, such as 18 U.S.C. § 641, which has a scope clearly broad enough to make criminal any conversion to personal use of checks as well as money, persuades us that a broad reading of the term "money" is not imperative.

AFFIRMED.

---

1. In other related criminal code sections Congress has used broader language. *See* 18 U.S.C. §§ 641 ("record, voucher, money, or thing of value ... property."); 654 ("money or property"); 655 ("money, note, draft, bond, or security or any other property of value"); 656 ("moneys, funds or credits," also "securities"). Other sections have used the terms "public moneys" or "public money" in the broad sense of public revenue that would include bank accounts under their control. *See* 18 U.S.C. §§ 643, 644, 645, 646, 648, 650, 651. But these sections condemn use of those funds for the personal benefit of the custodian.