UNITED STATES of America, Appellee,

v.

Bernette Floyd JACKSON, Appellant.

No. 84–5049.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 2, 1984.

Decided April 9, 1985.

Jack B. Swerling, Columbia, S.C. (Richard A. Harpootlian, Douglas K. Kotti, Columbia, S.C., on brief), for appellant.

Marvin J. Caughman, Asst. U.S. Atty., Columbia, S.C. (Henry Dargan McMaster, U.S. Atty., Columbia, S.C., Alexander M. Bullock, Third Year Law Student on brief), for appellee.

Before PHILLIPS and SPROUSE, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

SPROUSE, Circuit Judge:

Bernette Floyd Jackson appeals her convictions after jury trial of nineteen counts of violating 18 U.S.C. § 649 (1982) by failing to make timely deposits of cash and checks paid to the United States. Jackson contends that the evidence was insufficient to support her convictions and that the trial court erred in allowing the government to introduce evidence of the loss of interest on the funds caused by her failure to make timely deposits, in admitting evidence concerning her personal financial difficulties, in interrupting her counsel's final argument, in denying her requested jury instructions, and in improperly charging the jury. Finding no merit to any of these contentions, we affirm.

Jackson was employed as a unit collection officer for the United States Forestry Service in Columbia, South Carolina. Her duties included receiving funds remitted to the Forestry Service in payment for timber, maps, and recreation permits sold to the general public. The government alleged that from October 1981 through October 1982 Jackson failed on nineteen occasions to deposit remittances aggregating $759,116.77. Of this total, only $135 was indisputably in cash and $584.10 was by undetermined method of payment; the balance was remitted by check.[1] Jackson negotiated none of the checks; in fact, the government introduced no evidence that she appropriated any of the funds for personal use. Over Jackson's objection, however, the government introduced evidence that she was in personal financial distress, in order to support its allegations concerning her motive to fail to deposit the funds.

Section 649(a) provides:

Whoever, having money of the United States in his possession or under his control, fails to deposit it with the Treasurer or some public depositary of the United States, when required to do so by the Secretary of the Treasury or the head of any other proper department or agency or by the General Accounting Office, is guilty of embezzlement, and shall be fined in a sum equal to the amount of money embezzled or imprisoned not more than ten years, or both; but if the amount embezzled is $100 or less, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

18 U.S.C. § 649(a) (1982). The only issue raised by Jackson on this appeal that merits discussion is her contention that the evidence was insufficient to support her convictions on certain of the counts because checks payable to the United States are not "money of the United States" so that the failure to deposit them does not violate 18 U.S.C. § 649(a).[2] Jackson argues that the phrase "money of the United States" means only currency and coin. Her contention gains support from a recent decision by the Court of Appeals for the Tenth Circuit holding that "money" as used

---

**1.** There was considerable conflict in the evidence adduced at trial over the method of remittance for several of the nineteen occasions at issue.

**2.** Jackson contends that this argument supports reversal even of the two convictions covering remittances which definitely included cash.

She asserts that if presented with only two instances of misappropriation, the jury may have found mere mistake or inadvertence, whereas nineteen instances left the jury with no plausible explanation for her conduct except willful dereliction of duty.

in section 649(a) does not include checks payable to the United States. *United States v. Fernando,* 745 F.2d 1328 (10th Cir.1984).

Analyzing the statute by viewing its text, its legislative history, prior interpretations, related statutes, and the underlying congressional purpose and public policy considerations,[3] however, leads us to the conclusion that "money" as used in section 649(a) includes checks payable to the United States.

■ "The starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). In the instant case the text affords little guidance, as it refers only to "money of the United States," without definition. 18 U.S.C. § 649(a). The statute goes on to state, however, that it applies to "all persons charged with the safekeeping, transfer, or disbursement of the *public money.*" 18 U.S.C. § 649(b) (emphasis supplied). This elaboration suggests that the statute is concerned not with the form of the funds but instead with the public revenues of whatever form.

■ Dictionary definitions of statutory words that express commonly accepted meaning deserve some weight in the interpretive process, *Addison v. Holly Hill Fruit Products, Inc.,* 322 U.S. 607, 617–18, 64 S.Ct. 1215, 1221–22, 88 L.Ed. 1488 (1944); Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum.L.Rev. 527, 536–37 (1947). Dictionary definitions of "money," however, are not helpful in determining congressional intent in employing that term in section 649(a). Both Webster's and Black's indicate that the common meaning encompasses currency and coin, *Webster's New Collegiate Dictionary* 736 (1979); *Black's Law Dictionary* 906–07 (5th ed. 1979), but Webster's also defines money as "something generally accepted as

a ... means of payment." *Webster's* at 736. Black's includes a subdefinition of "public money" as "[r]evenue received from federal, state, and local governments from taxes, fees, fines, etc.," with no limit as to form. *Black's* at 907.

The legislative history of section 649 is equally unhelpful. There is nothing in committee reports, remarks on the floor of either House or any other legislative material relating to the enactment of section 649 and its substantially identical predecessors that contain any clue as to the scope of the term "money."

The paucity of prior constructions of section 649 further hampers the interpretive process. Aside from the Tenth Circuit's decision in *Fernando,* the meaning of "money" under section 649(a) has not been addressed by the courts. There are reported cases under a substantially similar predecessor statute, *Higgins v. United States,* 185 Fed. 710 (6th Cir.1911); *Dimmick v. United States,* 121 Fed. 638 (9th Cir.1903), but the nature of the funds misappropriated was not in issue in either case. In *Dimmick* the court spoke only of "lawful money of the United States," 121 Fed. at 640. In *Higgins,* however, the court affirmed a judgment for failure to deposit "money order funds," 185 Fed. at 711, without further specification. Neither court intimated that the application of the statute might turn upon the nature of the funds not deposited.

The Tenth Circuit in *Fernando* relied primarily upon a comparison of section 649 with other statutes. The court noted that section 649(a) uses the single term "money" while other statutes dealing with the misappropriation of United States property specify it in more detail: *e.g.* 18 U.S.C. § 641 (1982) ("record, voucher, money or thing of value"), 18 U.S.C. § 654 (1982) ("money or property"), 18 U.S.C. § 655 (1982) ("money, note, draft, bond, or security or any other property of value"). The

---

**3.** *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 197–214, 96 S.Ct. 1375, 1382–91, 47 L.Ed.2d 668 (1976); Kernochan, *Statutory Interpretation:* *An Outline of Method,* 3 Dalhousie L.J. 333, 348–63 (1976).

statutes compared in *Fernando,* however, were not enacted pursuant to any integrated legislative plan. They were, for the most part, based upon a variety of predecessor statutes, and there is no reason to suppose Congress intended them to comprise a consistent scheme for protecting the assets and revenues of the United States. In fact, the dearth of legislative history indicates that Congress enacted section 649 and its predecessors with little or no scrutiny of their relationship to other statutes, and we do not give significant weight to differences in legislative drafting that result from inertia rather than choice.

We are left to analyze "the most significant factor in the interpretive process"— Congress' general purpose in enacting section 649. Kernochan, *supra,* at 353. The general purpose, or "true reason of the remedy," *id.* at 354, has been defined as "a more generalized sense of what the legislature was trying to do, why it did what it did." *Id.* at 353. It can hardly be gainsaid that the purpose of section 649 is to protect the public funds of the United States from loss by imposing criminal liability on employees who breach their duty to deposit public funds. Nothing suggests that Congress, in enacting section 649 or any of its predecessors, believed some forms of public funds to be more vulnerable than others. A failure to deposit either checks or cash involves similar risks—possible loss of the funds, deprivation of the use of the funds for at least some period of time, and failure of proper recordkeeping.

In the period since 1846, when the progenitor of section 649 was enacted,[4] the use of checks and money orders to satisfy government obligations has completely overshadowed the use of currency. The funds involved in this case, for example, comprised over $750,000 in checks and no more than $750 in cash. We have found nothing to suggest that Congress, which has repeatedly enacted statutory language that originally clearly deterred the misappropriation of virtually all remittances to the United States, intended the scope of

that deterrent to vary with the evolution of non-cash methods of settling commercial transactions. To hold that section 649 proscribes the failure to deposit only cash would drastically narrow the protection of the public funds provided by the statute and thereby "do violence to the purpose of Congress." *United States v. Bramblett,* 348 U.S. 503, 509, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955). As the Supreme Court concluded in construing the statute in issue in *Bramblett,* "Congress could not have intended to leave [misfeasance] such as this without penalty." *Id.* We, therefore, conclude that checks constitute "money" as the term is used in section 649(a) and that the evidence amply supported Jackson's convictions on all nineteen counts.

Because we believe that Jackson's other contentions are also without merit, the judgment of the district court is in all respects

AFFIRMED.