**Kelly Jean CHRIS, Plaintiff,**

v.

**George J. TENET, Director Central Intelligence Agency, Defendant.**

**No. Civ.A. 99–494–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 28, 1999.

Pamela B. Stuart, Washington, DC, for plaintiff.

Helen F. Fahey, United States Attorney, Rachel C. Ballow, Assistant United States Attorney, Alexandria, VA, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This action for attorney's fees presents a threshold jurisdictional question—unresolved in this circuit—whether a Title VII [1] claimant who settles her discrimination claims during the administrative process, but who disputes the amount of the EEOC fee award, may bring a federal action under Title VII solely for attorney's fees.[2] For the reasons that follow, federal courts have no jurisdiction under Title VII to hear such an action.

### I.[3]

---

**1.** Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e to 2000e–17 (1994).

**2.** This case presents the precise issue that Justice Stevens, in a concurring opinion, noted remained unresolved after the Supreme Court's decision in *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). In *Carey* the Court held that a Title VII complainant may maintain a cause of action in federal court for attorney's fees incurred in state or local administrative proceedings. *Id.* In his concurring opinion, Justice Stevens noted that a properly filed underlying Title VII claim existed there, mak-

ing it unnecessary to decide whether a fee claim could be brought if federal litigation "had never commenced" and the "aggrieved party had obtained complete relief [on the merits of his claim] in the administrative proceedings." *Id.* at 72, 100 S.Ct. 2024 (Stevens, J., concurring).

**3.** The facts recounted here are derived from the Complaint and attachments thereto, including the EEOC's Granting of Requests to Reconsider dated January 7, 1998. The instant jurisdictional challenge proceeds, pursuant to Rule 12(b)(1), Fed.R.Civ.P., by challenging whether these facts, which are assumed to be true, suffice to support sub-

Plaintiff Kelly Jean Chris[4] ("Chris") brought this action against her employer, the Central Intelligence Agency (the "Agency") pursuant to §§ 706(k), 717(c) and 717(d) of Title VII,[5] for the sole purpose of recovering attorney's fees and costs she incurred in pursuing her gender employment discrimination claim against the Agency in proceedings before the EEOC. The pertinent facts begin on September 8, 1993, when Chris, represented by counsel, filed a claim for sex discrimination with the Agency's Equal Employment Opportunity Office (the "Agency's Office"). Specifically, she alleged discrimination occurred when she was denied an overseas assignment because she was "too attractive" and when she was issued a written warning regarding her relationship with a foreign national. Such a warning, she claimed, would not have been issued to a similarly situated male employee. Reasonable attorney's fees and costs were part of the relief she requested.

The Agency's Office investigated her allegations and issued a report on March 30, 1994. Chris alleges that following the issuance of this report, the Agency began retaliating against her by commencing a criminal investigation of her relationship with the foreign national. Accordingly, in July 1994, she filed a second complaint with the Agency's Office, alleging both sex discrimination and retaliation. As a result, the Agency's Office conducted a second investigation and issued a final report in March 1995.

On May 2, 1994, after the Agency issued its first report, but prior to the submission of her second Agency complaint, Chris filed a charge with the EEOC alleging a violation of Title VII's prohibition against sex discrimination. Following discovery, the parties entered into a confidential settlement agreement, in June 1995, which, *inter alia*, provided that in the event the parties did not reach agreement on the amount of the fees and costs due Chris, the Agency would pay her reasonable fees and costs in accordance with 29 C.F.R. § 1614.501(e). This regulation provides simply that where the parties cannot agree on fees and costs, the Agency will determine these amounts, which the claimant, if dissatisfied, may appeal to the EEOC.[6]

In the event, the parties did not reach agreement on fees and costs. Thus, as the "prevailing party" in her action, on July 15, 1995, Chris filed a petition with the Agency claiming a total of $79,484 in fees based on 256.4 hours of attorney work at $310 per hour,[7] and $1,920.84 in costs.[8]

ject matter jurisdiction. *See Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982) (stating that where the operative facts are undisputed, a court proceeds in a manner similar to an evaluation of a Rule 12(b)(6) motion for failure to state a claim, and assumes the truth of all facts as stated in the complaint).

4. "Kelly Jean Chris" is plaintiff's pseudonym, assigned to her for purposes of this proceeding. Her real name cannot be disclosed owing to the classified nature of her government work.

5. 42 U.S.C. §§ 2000e–5(k) and 2000e–16(c), (d) (1994).

6. 29 C.F.R. § 1614.501(e) provides, in pertinent part, as follows:
> If the complainant, the [complainant's] representative and the agency cannot reach an agreement on the amount of attorney's fees or costs ... the agency shall issue a decision determining the amount of attorney's fees or costs due .... The decision shall include a notice of right *to appeal to the EEOC* ....

29 C.F.R. § 1614.501(e)(2)(ii)(A) (emphasis added).

7. In determining the fee rate in her petition, Chris used the "Laffey matrix" established by *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354, 371–75 (D.D.C.1983) and subsequent cases. This is a compensation scheme for awarding attorney's fees based on years of legal experience. The validity of this method is not material to the jurisdictional issue at bar.

8. These figures are from the amended fee petition. The original petition claimed 254.4 hours of attorney work and $1,809.51 in costs.

The Agency balked at Chris' claimed hourly rate and offered $225 per hour instead. When Chris rejected this offer, the Agency issued its final fee award based on a $250 hourly rate. Eventually, the Agency paid Chris attorney's fees in the amount of $48,350, representing a fee award for 193.4 hours of attorney work at $250 per hour, and costs of $1,237.32. Dissatisfied with the Agency's final award, Chris nonetheless retained the $48,350, but sought additional fees by pursuing her administrative remedies in an appeal to the EEOC. She fared better at the EEOC, which issued a decision on July 19, 1996 awarding her attorney's fees in the amount of $59,510. based on a $275 hourly rate, and costs of $1,534.26. In justifying an hourly rate lower than Chris' requested rate, the EEOC determined that her counsel's experience in employment discrimination law was insufficient to warrant the requested $310 per hour. Both Chris and the Agency filed requests for reconsideration with the EEOC, which by decision issued on January 7, 1998, lowered its previous fee award to a total of $56,593 because some of the claimed hours were not compensable, but increased its costs award to $1,582.26. The order on reconsideration, however, did not depart from the EEOC's original determination that the rate of $275 per hour was reasonable for Chris' attorney.

In its order on reconsideration, the EEOC advised Chris that the "decision [was] final, and there [was] no further right of administrative appeal from the [EEOC's] decision," and that she "[had] the right to file a civil action in an appropriate United States District Court." *See*

Granting of Requests to Reconsider in *Chris v. Central Intelligence Agency,* EEOC Request No. 05960785 (Jan. 7, 1998). The order further advised Chris that if the Agency failed to comply with the EEOC's decision she could (1) petition the EEOC for enforcement of the order; (2) "file a civil action to enforce compliance with the [EEOC's] order prior to or following an administrative petition for enforcement"; or, (3) "file a civil action *on the underlying complaint*" subject to statutory deadlines for such an action.[9] *Id.* (emphasis added).[10] Chris did not elect any of these options, but instead filed an action in the United States District Court for the District of Columbia solely to collect the disputed attorney's fees and costs, namely the difference between the $275 hourly rate awarded by the EEOC and the $310 hourly rate she claimed. This District of Columbia action was subsequently transferred to the Eastern District of Virginia. *See* 28 U.S.C. § 1404(a). Thus, here Chris seeks "full" compensation for work performed prior to the appeal of the Agency's final decision on her fee petition, allegedly $32,262, reasonable attorney's fees, costs and interest for the time spent appealing the Agency's final decision to the EEOC, and fees and costs incurred in the instant action. The Agency, citing lack of subject matter jurisdiction, has moved to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(1).[11]

## II.

■ Chris claims reimbursement for fees and costs by virtue of § 2000e–(k) of Title VII, which states that "[i]n any *ac-*

9. The order cites 29 C.F.R. § 1614.503(g) which states that if an agency fails to comply with an EEOC order, the complainant has a right "to file a civil action for enforcement of the decision ... and to seek judicial review of the agency's refusal to implement the ordered relief ... or to commence de novo proceedings pursuant to the appropriate statutes."

10. The Agency complied with the EEOC's order to pay the fees and costs as set out in the decision on reconsideration; however, this payment was returned. In this regard, Chris'

federal court action is not to enforce the EEOC' order, a right guaranteed her under 29 C.F.R. § 1614.503(g), but rather it is to commence *de novo* proceedings solely on the amount of the fees.

11. The Agency has also moved to dismiss the Complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), which motion need not be addressed given the result reached on the jurisdictional question.

*tion or proceeding under this subchapter* the court, in its discretion, may allow *the prevailing party* ... a reasonable attorney's fee (including expert fees) as part of the costs ...." 42 U.S.C. § 2000e–5(k) (emphasis added).[12] More specifically, she claims she was the "prevailing party" in the EEOC proceeding, which she further claims, was an "action or proceeding" under Title VII. At the threshold, it is important to note that there is no dispute that Chris is a "prevailing party" under § 2000e–5(k). Nor is there any dispute that this is so notwithstanding that her discrimination claim never reached the courts, but was settled instead in the course of the administrative process.[13] Rather, the sole question presented here is whether Congress' jurisdictional grant to federal courts under Title VII encompasses an action solely for attorney's fees following a settlement of the claim in the administrative proceeding. This is a question of statutory construction given that under Title VII, the general provision conferring jurisdiction on federal courts states that "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of *actions brought under this subchapter.*" 42 U.S.C. § 2000e–5(f)(3) (emphasis added).[14] Thus, the crux of the issue is whether this action solely for attorney's fees constitutes an "action[ ] under this subchapter" thereby conferring jurisdiction on federal courts.

Because this question is one of statutory construction, analysis must begin with the plain language of the statute. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). And, where a statute's plain language is unambiguous the judicial interpretive task is at an end; further judicial efforts to construe or interpret the statute are unnecessary and inappropriate, as the statute must then be applied in accordance with its plain meaning. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990); *Rubin v. United States,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981); *Patten v. United States,* 116 F.3d 1029, 1035 (4th Cir.1997). When ambiguity infects a statute,[15] it is appropriate to resolve the issue through various settled rules of statutory construction and interpretation. *See United States v. Jackson,* 759 F.2d 342, 344 (4th Cir.1985), *cert. denied,* 474 U.S. 924, 106 S.Ct. 259, 88 L.Ed.2d 265 (1985).

Given these principles, analysis properly begins with a consideration of whether the key statutory phrase "actions brought under this subchapter" has a plain and unambiguous meaning. A persuasive case can be made that it has. When analyzing statutory language, "words are given their common usage." *Murphy,* 35

12. The specific authority for Chris to bring a Title VII claim is governed by § 2000e–16 because she is an employee of the federal government; however the authority for federal employees to seek attorney's fees is subject to the same statutory constraints as those of private sector employees, as the provisions of § 2000e–5(f) through (k) govern "civil actions" brought by an employee of the federal government. *See* § 2000e–16(d).

13. *See Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (recognizing that settlement on the merits renders a plaintiff a "prevailing party"); *see also Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (same); *Martin v.*

*Cavalier Hotel Corp.,* 48 F.3d 1343, 1359 (4th Cir.1995) (same); *EEOC v. Service News Co.,* 898 F.2d 958, 965 (4th Cir.1990) (same).

14. The reference to "this subchapter" encompasses all of Subchapter VI—Equal Employment Opportunities—under Title 42 of the United States Code and is typically referred to as "Title VII." 42 U.S.C. §§ 2000e to 2000e–17.

15. A statute may reasonably be said to be infected with ambiguity when its terms give rise to more than one meaning or interpretation. *See United States v. Murphy,* 35 F.3d 143, 145 (4th Cir.1994).

F.3d at 145. In this regard, "actions" indisputably refers to legal proceedings instituted to vindicate a claim or claims,[16] and the phrase "under this subchapter" defines the nature of the claims to be vindicated. So, the plain and unambiguous meaning of the entire phrase "actions under this subchapter" is legal proceedings to enforce the substantive rights guaranteed by the subchapter, which in this instance are the rights to be free from employment discrimination and retaliation based on race, color, religion, sex, or national origin.[17] *See generally* 42 U.S.C. §§ 2000e to 2000e–17. Given this, the statutory grant of jurisdiction to federal courts extends only to actions to vindicate these substantive rights, and only ancillary to such actions may federal courts discretionarily award fees and costs to the prevailing party. *See* § 2000e–5(k); *cf. White v. New Hampshire Dep't of Employment Security,* 455 U.S. 445, 451–52, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) (finding that a request for attorney's fees under 42 U.S.C. § 1988 "raises legal issues collateral to the main cause of action"). Thus, the jurisdictional grant in § 2000e–5(f)(3) does not extend to an independent action solely for attorney's fees and costs incurred in pursuing a claim for employment discrimination in an administrative forum.

Although the statute's plain meaning points persuasively to this conclusion, the analysis cannot end here, as Chris argues for an alternative reading of the jurisdictional grant. In essence, she argues that the ancillary power of a court to award fees and costs found in § 2000e–5(k) is an independent remedy for which an "action". may be brought under § 2000e–5(f)(3). This reading of the statute is unpersuasive; it runs counter to the plain meaning of the statutory language, and moreover, does not serve well the statutory purpose of reducing unnecessary litigation.[18]

█ Perhaps the most telling clue to the meaning of a putatively ambiguous statutory term is the meaning accorded that term elsewhere in the statute. This follows from the "well-established canon of statutory construction that words have the same meaning throughout a given statute." *Baggett v. First National Bank of Gainesville,* 117 F.3d 1342, 1350 (11th Cir.1997). This principle, applied here, supports the statute's plain meaning as granting jurisdiction only to actions to enforce the substantive rights guaranteed under Title VII and to adjudicate fee disputes only ancillary to such actions. Thus, each time the term "action" (or "actions") appears in Title VII it refers to, or is entirely consistent with, a court proceeding to prevent or remedy an unlawful employment practice.[19] In other words, the statute consis-

16. The term "action" in its usual legal sense is "[a]n ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." BLACK'S LAW DICTIONARY 28 (6th ed.1990).

17. This analysis is consistent with the Fourth Circuit's analysis of the jurisdictional requirement of § 2000e–5(f)(3). *See EEOC v. Henry Beck Co.,* 729 F.2d 301, 303 (4th Cir.1984) (finding jurisdiction for an action by the EEOC to enforce a pre-determination settlement agreement because it was one "brought directly under Title VII").

18. *See infra* text accompanying notes 22–27.

19. The words "action" and "actions" are used over forty times throughout the statute. The most frequent use of the terms is found within § 2000e–5, which contains not only the general jurisdictional grant, but also the attorney's fee provision. Two illustrative references, supportive of the result reached here, are § 2000e–5(h) which is titled "Provisions of Chapter 6 of Title 29 not applicable to *civil actions for prevention of unlawful practices*" and states in the subsection text only that Chapter 6 shall not apply to *"civil actions brought under this section"*; and, § 2000e–5(f)(3) which authorizes venue for the "actions under this subchapter" (1) where the unlawful employment practice is alleged to have been committed; (2) where the relevant employment records have been maintained; (3) where the aggrieved party would have worked absent the alleged unlawful employment practices; and if the respondent is not found in any of these places then (4) where respondent has its principal office (emphasis added).

tently uses the terms "action" or "actions" to refer to suits to enforce substantive rights. Not once is "action" used in the statute to refer to a suit solely for collateral or ancillary relief.[20] Indeed, to adopt the construction of § 2000e–5(f)(3) Chris advocates would lead to anomalous results unlikely to have been intended by Congress. For example, after the "action[ ] under this subchapter" is brought in federal court, it becomes the duty of the chief judge to designate "immediately" a judge to hear the case, and then that judge must set the case for hearing "at the earliest practicable date and [ ] cause the case to be in every way expedited." § 2000e–5(f)(4)–(f)(5). While these requirements are both sensible and understandable in connection with claims of employment discrimination or retaliation, they seem incongruous, if not inappropriate, when applied to an action solely for attorney's fees. It is doubtful that Congress intended to order expedition of claims brought solely to recover attorney's fees.[21] In sum, the pu-

tative ambiguity resulting from Chris' proposed construction of the phrase "actions under this subchapter" is properly resolved in favor of a construction that excludes an independent federal court action solely for attorney's fees.

Importantly, this conclusion is entirely consistent with both Title VII's overall purpose,[22] and, more specifically, with § 2000e–5(k)'s two-fold purpose:[23] (1) to "make it easier for a plaintiff of limited means to bring a meritorious suit,"[24] and (2) to deter burdensome and frivolous lawsuits by allowing a "prevailing party"— plaintiff or defendant—to obtain attorney's fees.[25] Further, the statutory scheme, including the creation of the EEOC, together with the requirement of deferrals to qualified state agencies reflect Congress' intent to use administrative conciliation as the primary means of handling claims.[26] What is central to the statute's scheme and purposes is a prevailing party's right to claim fees and costs in some forum.

20. In the two specific instances where the statute permits a federal court action for remedial measures to enforce the substantive rights of Title VII, Congress separately granted jurisdiction over such actions. This is persuasive evidence that Congress did not intend to include actions of this nature in the general jurisdictional grant found in § 2000e–5(f)(3). *See* § 2000e–8(c) (granting an employer permission to bring a "civil action" in a district court for relief from an EEOC order or regulation and granting district courts "jurisdiction" to issue an order requiring compliance); and § 2000e–5(f)(2) (permitting the EEOC to "bring an action" for temporary relief pending the resolution of a charge that has not been resolved by conciliation agreement if the EEOC decides judicial "action" is necessary "to carry out the purposes of the Act").

21. Indeed, in practice fees and costs are often not awarded in Title VII cases until after disposition of the appeal unless specific interim relief is warranted. *See White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 454, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) (acknowledging that district courts have the freedom to establish timeliness standards for hearing and deciding attorney's fee claims).

22. Title VII's overall purpose is "to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

23. This purpose may, with caution, be gleaned from § 2000e–5(k)'s "sparse" legislative history. *See Carey*, 447 U.S. at 63, 100 S.Ct. 2024. Caution is required because legislators' statements concerning statutory purpose are not invariably accurate; such statements may reflect only a minority legislative view or an effort to influence anticipated litigation over an ambiguity deliberately left in the statute. *See United States v. Charleston County School District*, 960 F.2d 1227, 1233 (4th Cir. 1992). In short, the statute itself is the best evidence of purpose.

24. *Id.* (quoting 110 Cong.Rec. 12724 (1964) (remarks of Senator Hubert Humphrey)).

25. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (quoting *Grubbs v. Butz*, 548 F.2d 973, 975 (D.C.Cir.1976)).

26. *Alexander*, 415 U.S. at 44, 94 S.Ct. 1011.

The result reached here does precisely this; it preserves a prevailing party's right to claim fees and costs solely in the administrative forum where the substantive claim is settled in that forum. In other words, the result reached here gives a prevailing party one, but not two, bites at the fees and costs apple.[27] In so doing, it succeeds in making it "easier for a plaintiff of limited means to bring a meritorious" discrimination claim; it also serves to deter the assertion of frivolous cases; and importantly, it ensures that the fees and costs tail does not ultimately wag the Title VII dog. *See Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (noting that even an attorney's fee request properly sought ancillary to a discrimination claim in federal court "should not result in a second major litigation").

Chris, relying on dicta in the Supreme Court's opinion in *Carey*, argues unpersuasively that Title VII's policy and purpose lead to a contrary result. To be sure, a footnote in *Carey* reflects a concern that "anomalous" results would follow from a rule allowing fee claims to be adjudicated in federal court only when ancillary to a filed Title VII claim. 447 U.S. at 65–66 n. 6, 100 S.Ct. 2024. Specifically, the footnote expresses the concern that such a rule would "ensure that almost all Title VII complainants would abandon state proceedings as soon as possible," and that this would "undermine Congress' intent to encourage full use of state remedies." *Id.* Chris' reliance on this dictum is unwarranted given that the Supreme Court later reconsidered this policy concern, found it to have been "exaggerated," and ultimately rejected it in favor of more persuasive policy arguments. *See North Carolina Department of Transportation v. Crest Street Community Council, Inc.*, 479 U.S. 6, 13–14, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986). Specifically, the Supreme Court in *Crest Street* reasoned that " 'competent counsel will be motivated by the interests of the client to pursue ... administrative remedies when they are available and counsel believes that they may prove successful.' " 479 U.S. at 14–15, 107 S.Ct. 336 (citing *Webb v. Dyer County Board of Education*, 471 U.S. 234, 241 n. 15, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985)). And, the Supreme Court also noted that in any event, an interpretation of a statute could not be based on a fear that an attorney would circumvent a potential remedy for his client simply because it did not authorize attorney's fees. *Id.* In addition, the Supreme Court stated that requiring the underlying action to be filed in federal court creates incentives for defendants to settle claims "expeditiously" rather than be subject to attorney's fees for prolonged litigation in federal court. *Id.* at 15, 107 S.Ct. 336. Perhaps most instructive was the Supreme Court's finding that, under

**27.** This is true for both public sector and private sector Title VII claimants. Public sector claimants, like Chris, are statutorily required to exhaust remedies at the EEOC, which in this context, is empowered to grant the full range of Title VII remedies, including an award of fees and costs. *See* § 2000e–16(b); *see also* 29 C.F.R. § 1614.501(e)(1); *West v. Gibson*, —— U.S. ——, 119 S.Ct. 1906, 144 L.Ed.2d 196 (1999) (holding that the EEOC has the authority under Title VII to award compensatory damages to public sector claimants, thereby making the EEOC a one-stop remedy center). Private sector claimants must also exhaust their remedies at the EEOC and, if appropriate, with a qualified state deferral agency. *See* § 2000e–5(c), (f); *see also Tinsley v. First Union National Bank*, 155 F.3d 435, 442 (4th Cir.1998) (finding the Virginia Council on Human Rights a qualified deferral agency under Title VII). But in this instance, the EEOC and many (though not all) state deferral agencies have no remedial power and the principle focus is on achieving a settlement through conciliation. In this context, claimants are often *pro se* and the issue of fees does not arise. Where a private sector claimant is represented and chooses to accept a settlement at the administrative level, then the issue of fees may be addressed in the settlement, should the parties choose to do so. Of course if a respondent refuses to address fees in the settlement, a private sector claimant may also choose to reject any settlement and, with a "right to sue" letter in hand, file suit in federal court and seek the full range of Title VII remedies and fees and costs. *See* § 2000e–5(f), (g), (k).

§ 1988, the statute at issue in that case, the award of attorney's fees "depends not only on the results obtained, but also on what actions were needed to achieve those results," and that "[i]t is entirely reasonable to limit the award of attorney's fees to those parties who, in order to obtain relief, found it necessary to file a complaint in court." *Id.* at 14, 107 S.Ct. 336.[28]

While there is no controlling Supreme Court or circuit precedent resolving the jurisdiction question presented, analogous authority supports the conclusion reached here. The most apt Supreme Court precedent is *Crest Street*, a decision interpreting language in the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988, that is virtually identical to the language in § 2000e–5(k).[29] 479 U.S. 6, 107 S.Ct. 336, 93 L.Ed.2d 188. In *Crest Street*, an action brought solely to recover attorney's fees, the plaintiff sought the fees as a result of a motion to intervene in a separate action in federal district court that itself did not involve violations of any civil rights laws. *Id.* at 10, 107 S.Ct. 336. Although the action in which the plaintiff sought to intervene did not include allegations of civil rights violations, plaintiff's proposed complaint on intervention alleged violations of Title VI of the Civil Rights Act of 1964. *Id.* The district court, without resolving the intervention motion, dismissed the plaintiff's proposed complaint after the original parties reached a settlement. *Id.* Relying on the Title VI claims in its proposed complaint, the plaintiff then filed a separate action in federal district court solely to recover attorney's fees under § 1988(b). *Id.* at 10–11, 107 S.Ct. 336. The Supreme Court held that because the action for attorney's fees was not itself an action to enforce any of the civil rights laws under Title VI, the plain language of § 1988(b) did not authorize a federal court to entertain a claim solely for attorney's fees. *Id.* at 12, 107 S.Ct. 336. For the same reason, the same result should obtain here. Because the instant action is not one to enforce the substantive rights guaranteed under Title VII, then it follows that § 2000e–5(k), like its virtually identical twin, § 1988(b), does not support an independent federal action to adjudicate an attorney's fees claim.[30]

This application of *Crest Street* to § 2000e–5(k) has been adopted by two unpublished district court decisions.[31] In

---

**28.** Further, the Supreme Court stated that it cannot "ignore the plain language of a statute" simply to avoid an "anomalous result" because " '[t]he short answer is that Congress did not write the statute that way.' " *Crest Street*, 479 U.S. at 14, 107 S.Ct. 336 (quoting *Garcia v. United States*, 469 U.S. 70, 79, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) in turn quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)).

**29.** Section 1988 provides in pertinent part:

In any action or proceeding to enforce a provision of ... [T]itle VI of the Civil Rights Act of 1964 [and other specified civil rights statutes] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs....

42 U.S.C. § 1988(b).

**30.** The difference in language between the two sections consists of the phrase any action "to enforce a provision of [Title VI]" versus the phrase any action "under [Title VII]." The insignificance of this difference is under-scored by the frequency and consistency with which courts have recognized that the two provisions are identical. *See, e.g., Hanrahan v. Hampton*, 446 U.S. 754, 758, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (noting that § 1988 was patterned after § 2000e–5(k)); *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1349 n. 10 (4th Cir.1995) (stating that the "standard for awarding attorney's fees under § 1988 is identical to that under Title VII"); *see also Hensley*, 461 U.S. at 433 n. 7, 103 S.Ct. 1933 (same) (citing S.Rep. 94–1011, 94th Cong., 2d Sess. 4 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin. News 5908, 5912). In addition, courts also recognize that the purpose of § 1988 is virtually identical to the purpose of § 2000e–5(k). *See City of Riverside v. Rivera*, 473 U.S. 1315, 1319, 106 S.Ct. 5, 87 L.Ed.2d 683 (1985).

**31.** Other courts discussing, but not squarely deciding the issue, are divided. *Compare Slade v. United States Postal Service*, 952 F.2d 357, 361 (10th Cir.1991) (stating that the decision in *Crest Street* is not dispositive of § 2000e–5(k) claims because § (k) has no re-

*Ball v. Abbott Advertising, Inc.*, state agency proceedings resulted in a finding of employer liability for sex discrimination, following which the "prevailing party" filed an action in federal court for attorney's fees. The district court granted summary judgment for the employer finding the holding of *Crest Street* dispositive of § 2000e–5(k) claims.[32] Similarly, in *Alexander v. Stone*, the district court dismissed an action under Title VII solely for attorney's fees brought by a civilian employee of the Department of the Army, and reiterated its reliance on *Crest Street* and the plain language of § 2000e–5(k) in denying reconsideration of the dismissal. *See* No. 91–2685, at 3–4 (D.N.J. May 1, 1992) (unpublished disposition).[33]

Chris relies almost exclusively on *Jones v. American State Bank*, the only circuit court decision addressing and deciding the question presented here. 857 F.2d 494 (8th Cir.1988). There, the Eighth Circuit relied chiefly on "policy arguments" found in the Supreme Court's decision in *Carey* and "themes which pervade Title VII in-

terpretation" to find federal jurisdiction over an independent fee claim resulting from state administrative resolution of a discrimination claim. *See* 857 F.2d at 498. Notably, the Supreme Court, since *Carey*, has disavowed certain of these policy arguments, particularly the suggestion that prohibiting an independent adjudication of attorney's fees would discourage victims from seeking relief or cause them to settle quickly on the employer's terms. *See Crest Street*, 479 U.S. at 13–15, 107 S.Ct. 336. No mention of this important point is found in *Jones*. Accordingly, the Eighth Circuit's reliance on *Carey* in this regard is unwarranted and unpersuasive. Also unpersuasive is the Eighth Circuit's single sentence, footnote dismissal of the relevance of *Crest Street*. Specifically, the Eighth Circuit simply noted, without discussion, that the mandatory administrative deferral system of Title VII rendered *Crest Street* inapplicable to § 2000e–5(k).[34] *Id.* at 499 n. 10. Although claims governed by § 1988 are not subject to Title VII's administrative exhaustion require-

quirement that the federal court action be brought to enforce Title VII), *and Duane M. v. Orleans Parish School Board*, 861 F.2d 115, 120 (5th Cir.1988) (holding that identical language of the attorney's fee provision of the Education of the Handicapped Act permits an independent action when the complaint has been settled at the administrative level), *with Keesee v. Orr*, 816 F.2d 545, 547 (10th Cir. 1987) (stating that a federal court "has no jurisdiction to hear ancillary claims [for attorney's fees] when there is no Title VII action properly before the court"), *and Paz v. Long Island Railroad Co.*, 954 F.Supp. 62, 64 (E.D.N.Y.1997) (noting "[c]ommon sense thus dictates that the reference to actions or proceedings 'under this [subchapter]' in § 2000e–5(k) necessarily refers to lawsuits or administrative proceedings alleging discrimination or retaliation in violation of Title VII"), *aff'd* 128 F.3d 121 (2d Cir.1997).

**32.** The district court's analysis is recounted in the Sixth Circuit's decision. *See Ball v. Abbott Advertising, Inc.*, 864 F.2d 419, 420 (6th Cir.1988) (per curiam).

**33.** Both of these decisions were appealed, but the respective circuits did not have occasion to address the jurisdiction issue. In *Ball*, the

Sixth Circuit affirmed the district court's dismissal of the attorney's fee action, but found it unnecessary to decide the applicability of *Crest Street* to Title VII actions because it found the case was barred by the statute of limitations. 864 F.2d at 420. And, in *Alexander*, apparently while the case was on appeal to the Third Circuit, the parties reached a settlement that included an agreement to vacate the district court's opinion. *See* Michael J. Davidson, *Crest: Judicial Preclusion of an Independent Suit Solely for Attorneys' Fees Under Title VII?*, (18 Del.J.Corp.L. 425, 441–43) (1993).

**34.** Title VII's deferral system requires that an aggrieved party pursue allegations of unlawful employment practices exclusively with a qualified state or local administrative agency for sixty days before that party is permitted to file a charge with the EEOC. *See* § 2000e–5(c). Such a charge filed with a state or local agency is pursued under state or local law and is subject to the remedies and relief permitted therein. *See id.;* 29 C.F.R. § 1601.13(a)(3)(ii). After the sixty days, a Title VII complainant may pursue the charge with the EEOC and, after waiting a minimum of 180 days, may file an action in federal court. *See generally* § 2000e–5.

ments, this distinction is irrelevant to the statutory jurisdictional analysis. *Crest Street* reflects this point; there, the Supreme Court conducted essentially the same sort of statutory analysis performed here and in the course of doing so, found it unnecessary to mention or discuss the absence of such mandatory exhaustion requirements.[35] Moreover, there is no reason in principle to predicate jurisdiction for an action solely for attorney's fees on Title VII's administrative exhaustion requirement given that after 240 days, a Title VII claimant, like the § 1988 claimant, is no longer barred from bringing the underlying discrimination action in federal court. *See Carey*, 447 U.S. at 66 n. 6, 100 S.Ct. 2024. (stating that after waiting 240 days, a Title VII complainant "appears to have an absolute right to resort to an action in federal court"). For these reasons, the Eighth Circuit's opinion in *Jones* is unpersuasive here.

 In summary, § 2000e–5(k)'s plain language, specific and overall purpose point persuasively to the conclusion that Title VII by its terms does not confer jurisdiction on federal courts to hear an independent claim for attorney's fees following settlement of the substantive claims at the administrative level. This result does not entail unfairness to this or other prevailing parties as such parties would clearly have the one bite of the apple that Congress intended.

Accordingly, the Agency's motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), is granted.

An appropriate Order will issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

---

**35.** *See* Marjorie A. Silver, *Evening the Odds: The Case for Attorneys' Fee Awards for Admin-* *istrative Resolution of Title VI and Tile VII Disputes,* 67 N.C.L.Rev. 379, 416–19 (1989).